UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER WRIGHT, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>ADVENTURES ROLLING CROSS COUNTRY, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-12-0982 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(Docket No. 7)** |

    Plaintiffs Peter Wright and Michelle Trame have filed a class and collective action complaint against Defendants Adventures Rolling Cross Country, Inc. ("ARCC") and Scott Von Eschen (ARCC's president), asserting claims for violation of California and federal employment laws. Currently pending before the Court is Defendants' motion to dismiss. Defendants' main argument in support of dismissal is that the claims are not viable because the work at issue was performed abroad and the state and federal employment laws do not cover extraterritorial conduct. Having considered the parties' briefs and the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss.

## II.    FACTUAL & PROCEDURAL BACKGROUND

    In their complaint, Plaintiffs allege as follows.

    ARCC is a California corporation that provides tours domestically and internationally to youths. *See* Compl. ¶¶ 7, 13. Tours offered by ARCC are led by employees who are called "Trip Leaders." *See* Compl. ¶ 14. The employment agreements that Trip Leaders sign include the

following provision: "For the tenure of your training and employment with ARCC, you are considered to be a California resident, subject to California's tax laws and regulations." Pls.' RJN, Ex. A (2009 Summer ARCC Leader Contract, General ARCC Policy ¶ 7).

Before leaving for trips, Trip Leaders undergo a 10-day training period in Mill Valley, California. The training usually lasts for 10 hours each day. *See* Compl. ¶ 16.

After the training, the Trip Leaders leave for the trips, which range from two weeks to approximately three months. *See* Compl. ¶ 16. During the trips, the Trip Leaders are "on-call 24 hours a day" as they are essentially babysitting. Compl. ¶ 16. Furthermore, "Trip Leaders actively work anywhere from 12-16 hours a day with little to no time to rest." Compl. ¶ 16.

In their individual cases, Plaintiffs estimate that each of them worked over 350 hours for a 24-day trip and earned about $1,000 total, which means that each earned less than $3 per hour. *See* Compl. ¶ 16. Mr. Wright's trip was to Italy and Greece; Ms. Trame's trip was to Costa Rica and Belize. *See* Compl. ¶¶ 5-6.

Based on, *inter alia*, the above allegations, Plaintiffs bring the following claims, both on their own behalf as well as the behalf of others similarly situated: (1) breach of contract; (2) failure to pay a minimum wage (under California law); (3) failure to pay overtime (under California law); (4) failure to page a minimum wage and overtime (under the Fair Labor and Standards Act ("FLSA")); (5) late pay and waiting time penalties (under California law); (6) failure to provide accurate itemized wage statements (under California law); (7) failure to provide rest breaks and meal periods (under California law); (8) failure to compensate for all hours worked (under California law); and (9) unfair practice in violation of California Business & Professions Code § 17200. Each of these causes of action is challenged in Defendants' motion to dismiss.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court

must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B.  FLSA Claim

As noted above, Plaintiffs have brought a claim pursuant to the FLSA for failure to pay a minimum wage and overtime. *See* 29 U.S.C. §§ 206, 207. With respect to the FLSA claim, Defendants argue for dismissal because Plaintiffs are seeking compensation for their work performed abroad and the FLSA does not cover extraterritorial conduct. In response, Plaintiffs make two arguments: (1) the employment agreements include a California choice-of-law provision and (2) part of the work done for ARCC was within California, more specifically, the training which was held in Mill Valley.[1]

Defendants have correctly represented that, for minimum wage and overtime claims, the FLSA expressly exempts from its coverage "work performed in a foreign workplace." *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 226 (3d Cir. 1991). Title 29 U.S.C. § 213(f) provides that "[t]he provisions of sections 6, 7, 11, and 12 [29 U.S.C. §§ 206, 207, 211, 212] shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country." 29 U.S.C. § 213(f). In enacting § 213(f),

---

[1] In their opposition, Plaintiffs claim that, after the trip, Trip Leaders spent additional time in California as part of a post-trip debriefing process. *See* Opp'n at 1. But, as Defendants point out, the complaint itself does not refer to a post-trip debriefing process, even though the employment agreements for Plaintiffs do mention a debriefing day. *See* Pls.' RJN, Ex. A (2009 Summer ARCC Leader Contract, ARCC Leader Pay Scale) (stating as an "Additional Benefit[]" that "ARCC covers all of your travel, housing and food costs from staff training . . . until your final Debrief Day after your last trip").

3

> Congress noted that the [FLSA] was obviously "designed to apply to a United States economy, [and its application] to overseas areas is usually inconsistent with local conditions of employment, the level of the local economy, the productivity and skills of indigenous workers, and is contrary to the best interest of the United States and the foreign areas."

*Cruz*, 932 F.2d at 226 (quoting Senate Rep. No. 987, reprinted in 1957 U.S. Code Cong. & Admin. News 1756-57).

In light of § 213(f), the Court agrees with Defendants that any work that Plaintiffs performed abroad is not a viable basis for the FLSA claim. Plaintiffs' reference to an alleged California choice-of-law provision is meaningless because at issue here is a federal claim, not a state one. Thus, the only question for the Court is whether Plaintiffs have a viable FLSA claim based on the fact that they performed at least some work for ARCC in the United States (more specifically, California) during the ten days that they were being trained in Mill Valley.

Defendants argue that the answer is no because, if one were to take each Plaintiff's alleged compensation of $1,000 and divide it by 100 hours (Plaintiffs claim that each worked 10 hours per training day), then Plaintiffs would be earning $10 per hour, which is more than the minimum wage (federal or state). According to Defendants, "[t]he same hold[s] true even when factoring in time-and-a-half overtime wages for all time allegedly worked over 8 hours per day." Reply at 4 & n.4 (providing calculations).

The problem with Defendants' position is that Plaintiffs claim to have been paid $1,000 for the *entire* time that they worked for ARCC – *i.e.*, both during the training (10 days) *and* abroad (24 days). It is not fair for Defendants to take the $1,000 compensation and treat it as if it were given solely for the training as opposed to the time spent abroad. This is especially true given that Plaintiffs' employment agreements specify that "[t]he contracted salary pay includes your time during Staff Training, Prep and Debrief Days as well as travel days to and from your trip(s)." Pls.' RJN, Ex. A (2009 Summer ARCC Leader Contract, ARCC Leader Pay Scale).

Accordingly, the Court grants in part and denies in part the motion to dismiss the FLSA claim. The motion is granted to the extent Plaintiffs base their FLSA claim on the work performed abroad; however, the motion is denied to the extent Plaintiffs base their FLSA claim on the work

4

performed in California. *See, e.g.*, *Sarviss v. General Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 891 (C.D. Cal. 2009) (noting that, as the parties agreed, the FLSA "indisputably does not provide a basis for overtime pay while Sarviss was in Pakistan"; thus, "the only question is whether Plaintiff can succeed on his FLSA claims for the time he spent in training in North Carolina and Texas"); *see also Torrico v. IBM*, 213 F. Supp. 2d 390, 402 (S.D.N.Y. 2002) (posing a hypothetical where a non-U.S. citizen mechanic is hired by a U.S.-based airline for a position at John F. Kennedy International Airport and works there for years but, "[d]ue to an unforeseen emergency at an airport abroad," goes to work at her employer's behest for a special two-week assignment; stating that, "[w]ithout question, while she is there, the employer could require her to work overtime without complying with the overtime pay provisions of the FLSA; that statute simply does not apply during weeks in which work is performed abroad").

C.  California Labor Code Claims

The bulk of Plaintiffs' claims are based on the California Labor Code and related IWC wage orders. In these state claims, Plaintiffs assert, *inter alia*, failure to pay a minimum wage and overtime, failure to provide accurate itemized wage statements, failure to provide rest breaks and meal periods, and failure to compensate for all hours worked. Similar to above, Defendants argue that these claims must be dismissed because Plaintiffs are seeking compensation for their work performed abroad and, absent a clear indication to the contrary, California law does not apply to extraterritorial conduct. Defendants emphasize that, under California law, there is a presumption against extraterritorial application of state law. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (taking note of the "so-called presumption against extraterritorial application"); *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1060 n.20 (1999) (noting that "[t]he presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute") (emphasis in original). As above, Plaintiffs argue in response that their claims are viable because (1) the employment agreements include a California choice-of-law provision and (2) part of the work done for ARCC was within California, more specifically, the training.

For the reasons discussed above, Plaintiffs do have viable state law claims based on their

work done in California. The issue, however, is more complicated for the work done abroad.

For the work done abroad, Plaintiffs do not dispute that California law has a presumption against extraterritorial application. Plaintiffs argue, however, that the presumption is irrelevant because the employment agreement they signed provided that California law would govern their relationship. The problem for Plaintiffs is that the claimed choice-of-law provision clearly is not such a provision. The alleged choice-of-law provision reads as follows: "For the tenure of your training and employment with ARCC, you are considered to be a California resident, subject to California's tax laws and regulations." Pls.' RJN, Ex. A (2009 Summer ARCC Leader Contract, General ARCC Policy ¶ 7). But simply because the parties agreed that Plaintiffs would be considered California residents does not necessarily mean that California law would therefore govern. *See, e.g.*, *Sullivan*, 51 Cal. 4th at 1197 (stating that "California's overtime laws apply by their terms to all employment in the state, without reference to the employee's place of residence"). Moreover, that the parties agreed Plaintiffs would be subject to California's *tax* laws and regulations does not necessarily mean that California's *employment* laws and regulations would also apply. To the extent Plaintiffs take the position that the word "tax" modifies only the word "laws" but not "regulations," that is a strained and unnatural reading of the contract. *See Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 554 (2003) (stating that "[m]ost readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears"). Under Plaintiffs' interpretation, they would be subject to tax laws but not non-tax *laws*, yet be subject to non-tax *regulations*. That reading makes no sense.

Finally, even if the provision identified by Plaintiffs were a choice-of-law provision, there is nothing to indicate that the parties intended to incorporate only portions of California law and exclude the incorporation of California law's presumption against extraterritoriality. Furthermore, as the Court discusses below, the California Labor Code provisions at issue implicitly contain geographical limitations and the Ninth Circuit has held that, "[w]hen a law contains geographical limitations on its application, . . . courts will not apply it to parties falling outside those limitations,

*even if* the parties stipulate that the law should apply." *Gravquick A/S v. Trimble Navigation International*, 323 F.3d 1219, 1223 (9th Cir. 2003) (emphasis added).

The Court concludes that the California Labor Code provisions at issue do not have extraterritorial application for several reasons. First, the California Supreme Court has referred to the presumption against extraterritorial application as far back as 1916. In *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1 (1916), the court stated: "Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect." *Id.* at 4. It added that "[t]he intention to make the act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" *Id.* In spite of this holding by the California Supreme Court, the California legislature, in enacting the relevant provisions of the California Labor Code in the 1930s and thereafter, failed to specify that there should be extraterritorial application for the provisions.

Second, the California legislature has in other provisions of the Labor Code expressly provided for extraterritorial application (*e.g.*, worker's compensation). *See Tidewater Mar. Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 577 (1996) (noting that, "[i]n some circumstances, state employment law explicitly governs employment outside the state's territorial boundaries" – *e.g.*, worker's compensation (Cal. Lab. Code §§ 3600.5, 5305)). Since the legislature has provided for extraterritorial application in other provisions of the Labor Code, the fact that the provisions at issue do not include any statement about extraterritorial application is doubly telling.

Finally, there is no competing presumption that would nullify the presumption against extraterritoriality. For example, while there is a presumption that a wage earner of California enjoys the protections of the Industrial Welfare Commission regulations, a wage earner of California is presumably an employee who "resides in California, receives pay in California, and works *exclusively, or principally*, in California." *Id.* at 578 (emphasis added). While perhaps not every element is necessary to obtain the protection of the California wage laws as discussed below, the last factor is important. In the instant case, Plaintiffs did not work exclusively in California; nor can

1 they be said to have worked principally in California when approximately two-thirds of their time
2 was spent working abroad (*i.e.*, ten days training, more than twenty days traveling abroad). While
3 the California Supreme Court did, in *Tidewater*, take note that "[t]he Legislature may have . . .
4 intended extraterritorial enforcement of IWC wage orders" in certain circumstances, the court made
5 clear that any such circumstances would be quite "limited" – *e.g.*, "when California residents
6 working for a California employer travel *temporarily* outside the state *during the course of the*
7 *normal workday* but return to California at the end of the day." *Id.* at 577-78 (emphasis added).
8 Plaintiffs cannot analogize their situation in which they spent weeks outside of California to the
9 situation described in *Tidewater*.

10 Notably, at least one other court has also concluded that IWC wage orders do not apply to an
11 employee who, although a resident of California, "spend[s] the vast majority of his employment
12 working outside of California." *Sarviss*, 663 F. Supp. 2d at 901 (emphasis omitted). The *Sarviss*
13 court, like this Court, took into account both the presumption that California law does not apply
14 extraterritorially and the presumption that IWC wage orders do apply to California wage earners.
15 According to the *Sarviss* court, the case before it fell somewhere between these two presumptions.
16 *See id.* at 899. Ultimately, the court resolved the issue by focusing on the situs of employment, *i.e.*,
17 asking "whether an employee principally works in California." *Id.* at 900. The Court agrees that
18 this approach is the most reasonable in the instant case as well.

19 The California Supreme Court's decision in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191
20 (2011) – a case that post-dates *Sarviss* – does not alter this Court's conclusion. In *Sullivan*, one of
21 the issues addressed by the California Supreme Court was whether a non-California resident, who
22 performed work outside of California for a California-based employer, could bring a claim that the
23 employer violated California Business & Professions Code § 17200 by failing to pay for that work
24 as required by the federal Fair Labor Standards Act ("FLSA"). The Court held that the plaintiff
25 could not because of the presumption against extraterritorial application. *See id.* at 1207. While the
26 court did note that "the UCL [*i.e.*, § 17200] might *conceivably* apply to plaintiffs' claims if their
27 wages were paid (or underpaid) in California," *id.* at 1208 (emphasis added), the court ultimately
28 made no such holding. Moreover, the California Supreme Court's decision in *Tidewater* indicates

8

1  that whether payment is made in the state is simply one factor to consider, along with whether the
2  employee is a resident of the state and performs work exclusively or principally in the state. Given
3  the presumption against extraterritorial application, this Court concludes that the situs of the work is
4  the most important factor. As noted above, in the instant case, the vast majority of the work was
5  performed outside the state, indeed outside the country, on a continuous basis with not even periodic
6  presence in California while Plaintiffs were abroad.

7  In sum, for the California Labor Code and related claims, the Court concludes that Plaintiffs
8  have viable claims based on their work performed in California but, for the work performed
9  continuously outside of California, there are no viable claims because the relevant Labor Code and
10 IWC wage orders do not have extraterritorial application in a case such as this, *i.e.*, where Plaintiffs
11 are California residents and the employer is based in California (such that presumably payments are
12 made in California) but the work is performed principally outside of California.

D.  <u>Section 17200 Claim</u>

The Court concludes that the § 17200 claim is viable to the extent the FLSA and California Labor Code claims above are viable.

E.  <u>Breach of Contract</u>

Finally, Plaintiffs assert in their complaint a claim for breach of contract. This claim is based on the provision in the employment agreements that, "[f]or the tenure of your training and employment with ARCC, you are considered to be a California resident, subject to California's tax laws and regulations." Compl. ¶¶ 20, 41. Based on this provision, Plaintiffs claim that they were "contractually entitled to the benefit of California's wage and hour laws, which were violated, as described in the other Causes of Action herein." Compl. ¶ 42. Plaintiffs maintain that Defendants breached the contracts with Plaintiffs "[b]y violating California law." Compl. ¶ 43.

The Court dismisses Plaintiffs' claim for breach of contract with prejudice. If the provision above is, in fact, a choice-of-law provision as Plaintiffs claim (which this Court rejects), then all that Defendants agreed to in the contract was that California law, including its geographical limitations, would govern the contract. For the reasons stated above, the California wage law does not apply to Plaintiffs' work while continuously outside the state.

///

///

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. More specifically, the Court rules as follows:

(1) The FLSA claim is dismissed only in part. Dismissal (with prejudice) is appropriate with respect to the work performed abroad; dismissal is not appropriate with respect to the work performed in the United States (*i.e.*, Mill Valley, California).

(2) The California Labor Code claims are dismissed only in part. As above, dismissal (with prejudice) is appropriate with respect to the work performed abroad but not with respect to the work performed in California.

(3) The § 17200 claim rises and falls with the FLSA and California Labor Code claims.

(4) The claim for breach of contract is dismissed in its entirety and with prejudice.

This order disposes of Docket No. 7.

IT IS SO ORDERED.

Dated: May 3, 2012

_____
EDWARD M. CHEN
United States District Judge