UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER WRIGHT, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>ADVENTURES ROLLING CROSS COUNTRY, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-12-0982 EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR AN ORDER PROHIBITING DEFENDANTS FROM DIRECTLY CONTACTING PLAINTIFFS AND POTENTIAL CLASS MEMBERS; AND GRANTING PLAINTIFFS' MOTION FOR A CORRECTIVE NOTICE**<br><br>**(Docket Nos. 18, 23)** |

    Plaintiffs Peter Wright and Michelle Trame have filed a class and collective action complaint against Defendants Adventures Rolling Cross Country, Inc. ("ARCC") and Scott Von Eschen (ARCC's president), asserting claims for violation of California and federal employment law. Currently pending before the Court are two motions filed by Plaintiffs: (1) a motion for an order prohibiting Defendants from directly contacting Plaintiffs and potential class members and (2) a motion for corrective notice. Also pending before the Court are various motions to file under seal.

## I.    **FACTUAL & PROCEDURAL BACKGROUND**

    ARCC is a California corporation that provides tours domestically and internationally to youths. *See* Compl. ¶¶ 7, 13. Tours offered by ARCC are led by employees who are called "Trip Leaders." *See* Compl. ¶ 14. In their complaint, Plaintiffs allege that, when they were formerly employed as Trip Leaders, Defendants violated both California and federal employment law by, *inter alia*, failing to pay a minimum wage and overtime and failing to provide rest breaks and meal

periods. Plaintiffs have brought both individual claims against Defendants as well as class/collective action claims.

In the currently pending motions, Plaintiffs seek to bar Defendants from directly contacting them or potential members of the class based on communications that Plaintiffs received from Defendants. Plaintiffs further ask that the Court issue a corrective notice to potential class members based on communications already issued by Defendants to potential class members. The relevant communications are as follows.

A. <u>Initial Communication to Potential Class Members, Dated February 23, 2012</u>

Plaintiffs filed the lawsuit against Defendants in state court on February 17, 2012. According to Plaintiffs' counsel, a copy of the complaint was e-mailed to defense counsel on February 21, 2012. Formal service was effected on February 22, 2012. *See* Docket No. 24 (Benham-Baker Decl. ¶ 4).

The day after formal service, *i.e.*, on February 23, 2012, Ellery Fink of ARCC sent an e-mail to members of the potential class. In the e-mail, Ms. Fink stated that "ARCC needs your help" because it "has been contacted by a law firm threatening a lawsuit against ARCC. These lawyers want to file a suit on your behalf ostensibly for 'wage' issues while you led your trip." Docket No. 25 (Anonymous Decl., Ex. 1) (e-mail). Ms. Fink expressed the opinion that "this is a legal 'fishing' expedition. A common practice is for lawyers to target an industry (in this case camps and teen travel) and threaten wage lawsuits and hope to get paid off. The lawyers generally get paid 25-35% of whatever deal they negotiate." Docket No. 25 (Anonymous Decl., Ex. 1) (e-mail). She warned that, "[i]f successful, this could drive ARCC and other similar organizations out of business." Docket No. 25 (Anonymous Decl., Ex. 1) (e-mail). Ms. Fink continued: "We'd like to show the plaintiff lawyers they would be wise to seek a payday elsewhere." Docket No. 25 (Anonymous Decl., Ex. 1) (e-mail).

Ms. Fink concluded the e-mail by stating:

> Our hope is to discourage the opposing lawyers from pursuing this case. One of the best ways to discourage the lawyers is for former leaders to state that they would choose not to participate in a lawsuit. We are contacting past leaders and asking for such a statement.

2

> Please note that making such a statement is not meant to drag you into the lawsuit. We are simply hoping it will discourage the lawyers from forcing us into court. You are welcome to decline this, but hope you will help us keep ARCC alive for future campers and leaders.

Docket No. 25 (Anonymous Decl., Ex. 1) (e-mail).

B. <u>Communications to Plaintiffs, Dated April 17, 2012</u>

On April 17, 2012, *i.e.*, a few months into the lawsuit, Mr. Von Eschen, as president of ARCC, sent each Plaintiff a letter, asking that he or she withdraw support for the lawsuit. In the letters, Mr. Von Eschen stated that, "[i]n pursuing this suit – for perhaps a few hundred dollars – [Plaintiffs would] be risking [their] reputations and finances, while [their] lawyers [would] reap most of the reward (which is, of course, exactly why they've chosen to pursue this)." Wright Decl., Ex. 1 (letter); Trame Decl., Ex. 2 (letter). Mr. Von Eschen also warned Plaintiffs that:

(1) "All your past transgressions will become very public. In a case like this, your life will become a very public sideshow for current and future employers, friends[,] and family to access online."

(2) "Don't plan any significant travel for the foreseeable future: Litigation in a case like this can put your life into a holding pattern for years."

(3) "This is going to cost you a great deal of money, likely much more than you will receive from the lawsuit against ARCC: I'm not sure if your lawyers have told you this, but because they initiated these proceedings, we are compelled at this time to file a countersuit against you . . . for breach of contract. To date, we've had to refund almost $10,000 to families unhappy with leader behavior on your trips."

Wright Decl., Ex. 1 (letter) (emphasis omitted); Trame Decl., Ex. 2 (letter) (emphasis omitted).

Finally, Mr. Von Eschen asked Plaintiffs to seek outside advice:

> I say all this not to scare you, but to give you a realistic view of the impact on your life if we continue to move forward. [Plaintiffs] are the ones putting [their] professional reputations and bank accounts at risk while your lawyers risk nothing other than some hours in legal time copying language from one lawsuit to another. *Even if you win the case, they pocket the money and you are left with tattered reputations and substantial legal bills.*

Wright Decl., Ex. 1 (letter) (emphasis in original); Trame Decl., Ex. 2 (letter) (emphasis in original).

1    After getting a copy of the communications from Plaintiffs, Plaintiffs' counsel contacted
defense counsel on April 20, 2012. *See* Schwartz Decl., Ex. 3 (e-mail). In a responsive e-mail dated
April 22, 2012, defense counsel stated, *inter alia*: "Our client has done nothing improper, and done
nothing more than exercise his fundamental First Amendment rights." Schwartz Decl., Ex. 4 (e-mail).

Plaintiffs' counsel thereafter filed the first motion currently pending before the Court – *i.e.*, the motion to prohibit direct contact with Plaintiffs and potential class members.

C.    <u>Second Communication to Potential Class Members on May 1, 2012</u>

On April 30, 2012, counsel for Plaintiffs sent a communication to potential class members, notifying them that counsel "represents ARCC employees who have sued the company claiming they were unlawfully denied minimum wage, proper overtime compensation, and meal and rest breaks." Docket No. 38 (Von Eschen Decl., Ex. D) (e-mail). Counsel stated that "[w]e are currently investigating the extent to which ARCC unlawfully denied California minimum wage, breaks, overtime and other compensation to its employees within the last several years. . . . If Plaintiffs are correct, current and former ARCC employees would be entitled to receive back pay and penalties from ARCC." Docket No. 38 (Von Eschen Decl., Ex. D) (e-mail) (emphasis omitted). Counsel concluded by stating that, "[i]f you have any information which may be helpful in this investigation, please contact us as soon as possible for a short interview." Docket No. 38 (Von Eschen Decl., Ex. D) (e-mail) (emphasis omitted).

The next day, *i.e.*, May 1, 2012, Ms. Fink sent a second communication to potential class members. According to Mr. Von Eschen, ARCC believed this communication was necessary

> to respond to the accusations that were contained within the solicitation email that had been sent on April 30, 2012 by the lawyers representing the Plaintiffs. My intent was to give the recipients the other side of the story, and to address the misleading statements contained in the email from the Plaintiffs' attorneys.

Docket No. 38 (Von Eschen Decl. ¶ 12).

In the May 1 communication, Ms. Fink stated, *inter alia*, the following:

(1)   "Yesterday you may have received an email from a law firm outlining a 'wage and hour' complaint the are filing against ARCC. This law firm has made a series of aggressive and possibly

4

1  unethical moves in the last few months. . . . We would hope you would choose not to associate
2  yourself with such a firm."

3  (2) "California has very specific wage laws for summer camps. Since our early days, we have
4  considered ourselves to be a summer camp and have tried to follow these rules and regulations."

5  (3) "This law firm apparently found two former ARCC trip leaders from 2009, Peter Wright
6  (GRIT) and Michelle Trame (CRBEL), willing to sue saying ARCC didn't give them rest breaks,
7  meal breaks, days off in the middle of trips, pay while they were sleeping, etc. No one can quite
8  figure out why Peter and Michelle would want to expose themselves to the searing scrutiny and time
9  commitment of a public trial for a few hundred dollars. For the law firm, however, the math is quite
10 clear: the more leaders that participate, the more the lawyers get paid."

11 (4) "The law firm is not only attacking ARCC, but is also attacking our industry. . . . Many of
12 these organizations could not withstand the financial pressure of such a threat (the lawyers
13 essentially say 'pay up or we will sue you') and might simply cease to exist."

14 (5) "[W]e hope you won't associate with a law firm that dances along the ethical line. We
15 would appreciate it if you could reply to their email [and] [l]et them know you don't wish to
16 participate in their law suit."

17 Docket No. 25 (Anonymous Decl, Ex. 2) (e-mail).

18  Plaintiffs' counsel subsequently learned of both the February 23 and May 1 communications
19 from Defendants and then filed the second motion currently pending before the Court – *i.e.*, the
20 motion for corrective notice. Plaintiffs have submitted a proposed corrective notice (approximately
21 two-and-a-half pages total) as Exhibit A to the Benham-Baker declaration. *See* Docket No. 24
22 (Benham-Baker Decl., Ex. A).

## II. DISCUSSION

A. Plaintiffs' Motion to Prohibit Direct Contact

"Pre-certification communications to potential class members by both parties are generally permitted . . . ." *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C 05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005). However, a court has the authority to restrict such communications. Federal Rule of Civil Procedure 23(d) provides that a court may make appropriate

5

orders "requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action . . . ." Fed. R. Civ. P. 23(d)(2). The Supreme Court has acknowledged that, under Rule 23(d), a court has the authority to issue an order limiting communications between the parties and potential class members. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (noting that, "[b]ecause of the potential for abuse [in a class action], a district court has both the duty and the broad authority to exercise control over [the] class action and to enter appropriate orders governing the conduct of counsel and parties"). That being said, the Supreme Court has also specified that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for such a limitation and the potential interference with the rights of the parties." *Id.* at 101. "[S]uch a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102. In general, "[c]ourts have limited per-certification communications with potential class members after misleading, coercive, or improper communications were made." *Mevorah*, 2005 WL 4813532, at *3. One example of an improper communication is a communication intended to undermine a class action by encouraging individuals not to join the suit.[1] *See, e.g.*, *Belt v. EmCare Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (stating that "[c]ourts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit").

In the instant case, Plaintiffs have established that, at the very least, Defendants' communications were improper because they plausibly could have a chilling effect on participation in the class action. Most problematic in Defendants' communications to Plaintiffs are the comments

---

[1] The instant case has been brought both as a class action and as a collective action (under the FLSA). Essentially, courts have applied the same legal standard above in collective actions. *See, e.g.*, *Parks v. Eastwood Ins. Servs.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) (noting that, "[f]or purposes of defense communication with § 216(b) prospective plaintiffs, the situation is analogous to a pre-certification Rule 23 class action") (emphasis omitted); *see also Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (taking note of potential for abuse in collective action context just as in class action context).

about how Plaintiffs' lives will be subject to public scrutiny as a result of the litigation – including future employers. While Defendants' communications to potential class members did not harp on the issue (in contrast to the communications to Plaintiffs), they still referenced it: "No one can quite figure out why [Plaintiffs] would want to expose themselves to the searing scrutiny and time commitment of a public trial for a few hundred dollars." Anonymous Decl., Ex. 2 (e-mail).

Also problematic in Defendants' communications – both to Plaintiffs and the potential class – are the comments about Plaintiffs' counsel. There are two basic charges leveled at counsel: (1) that they are interested solely in a payoff and (2) that they have acted unethically. The first accusation, while not unusual and fairly clearly an opinion, is still problematic. It is no doubt intended to encourage Plaintiffs and/or potential class members not to participate in the lawsuit. Similarly, the second accusation is clearly intended to deter participation. This accusation is also more problematic than the first, particularly because Defendants did not provide any specificity in their communications as to how Plaintiffs' counsel had allegedly acted unethically.

Defendants' arguments in their opposition brief are, for the most part, irrelevant. Whether the communications constitute actionable retaliation, whether they are privileged, and/or whether they were merely opinions made in good faith is largely unimportant. The critical question is whether there is a realistic danger that the communications will chill participation in the class action.

Similarly, the cases on which Defendants rely in their papers are of limited support as they are factually distinguishable. For example, in *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 U.S. Dist. LEXIS 24823 (N.D. Cal. Mar. 28, 2006), the communication from the defendants simply "inform[ed] potential collective action members that it is their decision whether to speak to any lawyer that contacts them and that, if they decide to speak to Plaintiffs' attorneys, they will not be retaliated against." *Id.* at *22.

Because Defendants' communications have plausibly had a chilling effect on participation in the class action, the Court finds that it is appropriate to invoke its powers pursuant to Rule 23(d) to limit communications between the parties and potential class members. More specifically, the Court shall impose the following restrictions:

(1) Defendants themselves (as opposed to their attorneys) are barred from communicating with

1 potential class members regarding this litigation. This limitation does not prohibit Defendants from
2 communicating with potential class members on purely business-related matters.

3 (2) Counsel for both parties are permitted to communicate with potential class members
4 regarding this litigation within the following confines. If counsel makes a "mass communication" to
5 all potential class members, then counsel shall give opposing counsel notice that such a
6 communication has been made within two business days following the communication and shall
7 include a copy of that communication. This restriction does not bar counsel from communicating
8 with potential class members on an individual basis for purposes of investigation and gathering
9 evidence.

### B. Plaintiffs' Motion for Corrective Notice

For reasons similar to above – *i.e.*, because Defendants' communications have posed a realistic danger that participation in the lawsuit will be chilled – the Court shall also grant Plaintiffs' request for a corrective notice. The Court shall also require Defendants to identify every potential class member to whom to whom a prior "mass communication" was disseminated (including contact information).

As for the content of the corrective notice, the Court proposes the following notice. **The parties are to submit their comments on the proposed notice (no longer than five pages) within three days of the date of this order.**

### COURT NOTICE

You may have received emails from Adventures Rolling Cross Country ("ARCC") regarding the lawsuit referenced above. These emails were not reviewed by the Court prior to their sending. The Court has authorized this notice to correct any possible misunderstandings created by the emails.

### Background on Lawsuit

Plaintiffs in this case are former employees of ARCC. They have filed a class/collective action on their own behalf and on the behalf of others similarly situated against ARCC and Scott Von Eschen (collectively, "Defendants"). Plaintiffs contend that ARCC Trip Leaders are entitled to the protection of United States and California law, including payment of minimum wages and

overtime. The Court has limited the wage claims tor time spent in California during training and/or post-trip debriefing. Defendants dispute all of Plaintiffs' claims, asserting, among other things, that they are exempt from federal and state minimum wage and overtime laws because ARCC is an organized camp that conducts operations during a particular season (*i.e.*, summer).

<u>The Court has not made any findings in this matter.</u>

### ARCC's Criticisms of Plaintiffs' Attorneys

ARCC's emails contained statements that were critical of Plaintiffs' attorneys. Any such statements are solely the opinions of ARCC. Whether or not you decide to participate in this lawsuit as a class action member, you should decide independently whether you wish to have Plaintiffs' attorneys, another attorney, or no attorney represent you.

### Consequences of Your Participation in the Lawsuit or Cooperation with Plaintiffs' Counsel

Comments made by ARCC about what you might receive from this lawsuit or what might happen to you should you decide to participate in the lawsuit and cooperate with Plaintiffs' counsel is solely the opinion of ARCC.

### Retaliation Is Prohibited

It is a violation of federal and California law for ARCC, or any of its managers or agents, to retaliate or otherwise discriminate against you for taking part in this case. If you believe that you have been penalized in any way for participating in this lawsuit or for considering participating in this lawsuit, you may contact a lawyer, either Plaintiffs' counsel or another attorney or your choosing. You may contact Plaintiffs' counsel at [one specific attorney, one specific telephone number, one specific email].

### Communications from Attorneys

Attorneys representing Plaintiffs and/or Defendants may contact you about this lawsuit. It is up to you whether to communicate with the attorneys. As indicated above, you will not suffer any negative consequences for speaking with Plaintiffs' attorneys. If you communicate with Defendants' lawyers, those communications will not be confidential and could be used by Defendants in this case.

### III. CONCLUSION

For the foregoing reasons, the Court grants both of Plaintiffs' motions. In addition, the Court denies each party's motion to file under seal, with one exception: The Court shall permit redaction of the students' names and any contact information. Redacted filings shall be made within three days of the date of this order. For electronic filing of documents under seal, counsel are directed to General Order No. 62.

This order disposes of Docket Nos. 18, 23, 28, and 34.

IT IS SO ORDERED.

Dated: June 15, 2012

_____
EDWARD M. CHEN
United States District Judge