1    REED E. SCHAPER (SBN 082792)
     rschaper@hkemploymentlaw.com
2    HIRSCHFELD KRAEMER LLP
     233 Wilshire Boulevard, Suite 600
3    Santa Monica, CA 90401
     Telephone: (310) 255-0705
4    Facsimile: (310) 255-0986

5    KRISTIN L. OLIVEIRA (SBN 204384)
     koliveira@hkemploymentlaw.com
6    HIRSCHFELD KRAEMER LLP
     505 Montgomery Street, 13th Floor
7    San Francisco, CA 94111
     Telephone: (415) 835-9000
8    Facsimile: (415) 834-0443

9    Attorneys for Defendants
     ADVENTURES ROLLING CROSS COUNTRY,
10   INC., dba ADVENTURES CROSS COUNTRY
     (ARCC) and SCOTT VON ESCHEN

11

<div style="text-align:left; margin-left:2em; font-variant:small-caps;">HIRSCHFELD KRAEMER LLP<br>Attorneys At Law<br>Santa Monica</div>

12            UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT

14             SAN FRANCISCO DIVISION

15

16   PETER WRIGHT and MICHELLE       Case No. 3:12-cv-00982-EMC
     TRAME, individually, on behalf of all
17   others similarly situated, and on behalf of   **DEFENDANTS' NOTICE OF MOTION AND**
     the general public,                   **MOTION FOR PARTIAL SUMMARY**
18                           **JUDGMENT; MEMORANDUM OF POINTS**
             Plaintiffs,               **AND AUTHORITIES [FILED WITH**
19                           **DECLARATION OF SCOTT VON**
     vs.                              **ESCHEN; REQUEST FOR JUDICIAL**
20                           **NOTICE]**
     ADVENTURES ROLLING CROSS
21   COUNTRY, INC., dba ADVENTURES
     CROSS COUNTRY (ARCC), a California    Date:      April 4, 2013
22   Corporation, SCOTT VON ESCHEN, and   Time:      1:30 p.m.
     DOES 1 through 50 inclusive,          Ctrm:      5, 17th Floor
23                           Judge:     Hon. Edward M. Chen
            Defendants.
24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

## NOTICE OF MOTION

TO THE COURT AND ALL PARTIES:

NOTICE IS HEREBY GIVEN that on **Thursday, April 4, 2013 at 1:30 P.M.**, or as soon thereafter as counsel may be heard in the above-entitled United States District Court, located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants Adventures Rolling Cross Country and Scott von Eschen ("Defendants" or "ARCC") will and hereby do move the Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.

This motion is made on the grounds that there is no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law as to Plaintiffs' Fourth Cause of Action for Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, 216, because Defendants are an organized camp or recreational establishment and thus exempt from the FLSA under 29 U.S.C. §213(a)(3).[1]

Defendants' motion for partial summary judgment is made on the further basis that ARCC is an organized camp under the California Health & Safety Code and is entitled to exemptions afforded an organized camp, as identified in Defendants' First Affirmative Defense.

//
//
//
//
//
//
//
//
//

---

[1] The caption of Plaintiffs' Complaint indicates that their sole claim arising under the Fair Labor Standards Act is labeled as their "Eighth" cause of action. However, in the body of Plaintiffs' Complaint, the factual assertions and legal allegations supporting the sole FLSA claim are labeled as the "Fourth Cause of Action – Failure to Pay Overtime and the Minimum Wage In Violation of Federal Law (Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, 216 ("FLSA")." See Cmplt., ECF Document 1, Filed 2/27/29, pp. 11:26-13:7, ¶¶57-65.

DEFENDANT'S NOT. OF MTN AND MTN FOR PARTIAL SUMMARY
JUDGMENT; MEMO. OF P&A; CASE NO. 3:12-CV-00982-EMC

1        This motion is based upon this Notice of Motion and Motion, the below Memorandum of

2    Points and Authorities, the Request for Judicial Notice and the Declaration of Scott von Eschen

3    and attached exhibits filed concurrently herewith, all pleadings and papers on file in this action,

4    and upon such other matters as may be presented to the Court at the time of hearing.

5

6    Dated: February 28, 2013                               HIRSCHFELD KRAEMER LLP

7

8                                                  By:   /s/  Reed E. Schaper
                                                           Reed E. Schaper
9                                                          Kristin L. Oliveira
                                                   Attorneys for Defendants
10                                                 ADVENTURES ROLLING CROSS
                                                   COUNTRY, INC., dba ADVENTURES
11                                                 CROSS COUNTRY (ARCC) and SCOTT
                                                   VON ESCHEN
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

# Table of Contents

Page(s)

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................... 1

II.  STATEMENT OF FACTS ...................................................................................................... 2

    A.  An Overview of ARCC's Adventure Trip And Travel Summer Camps. ......................... 2

    B.  The Role Of ARCC'S Trip Leaders ................................................................................ 4

    C.  ARCC Operates As A Summer Camp. ............................................................................ 5

    D.  ARCC Operated As An Organized Camp For Less Than Seven Months In Each
       Calendar Year. ................................................................................................................. 6

    E.  ARCC's Average Receipts For Calendar Years During The Statutory Time Period. ...... 6

III. LEGAL ARGUMENT ............................................................................................................ 7

    A.  Partial Summary Judgment Standard .............................................................................. 7

    B.  ARCC is Exempt from the Minimum Wage and Overtime Requirements of the Fair
       Labor Standards Act. ....................................................................................................... 7

         1.  Exclusive trip or travel camps, whose singular specialty is trip or travel camping.
            Often these programs have no permanent base site and do not score the site and food
            service standards. ..................................................................................................... 15

         2.  Resident camps who offer trips of three nights or more as one of their program
            options. ..................................................................................................................... 15

         3.  Day camps who offer trips of three nights or more as a special program option, of
            for experienced or older campers. (capitalization in original). .................................. 15

    C.  ARCC is An Organized Camp Under The California Health & Safety Code
       Definition. ....................................................................................................................... 17

IV.  CONCLUSION ................................................................................................................... 18

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

DEFENDANT'S NOT. OF MTN AND MTN FOR PARTIAL SUMMARY
JUDGMENT; MEMO. OF P&A; CASE NO. 3:12-CV-00982-EMC

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Beal Bank, SSB v. Pittorino,*
   177 F.3d 65 (1st Cir. 1999)......................................................................................7

*Brennan v. Texas City Dike & Marina, Inc.,*
   492 F.2d 1114 (5th Cir. 1994).............................................................................11, 12

*Brennan v. Yellowstone Park Lines,*
   478 F.2d 285 (10th Cir. 1973)...............................................................................8, 9

*Brock v. Louvers and Dampers, Inc.,*
   817 F.2d 1255 (6th Cir. 1987)...................................................................................8

*Hamilton v. Tulsa County Public Facilities Authority,*
   85 F.3d 494 (10th Cir.1996).....................................................................................10

*McMillan v. BSA-Aloha Council,*
   2012 U.S. Dist. LEXIS 83346 (D. Haw. 2012) .......................................................14

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944)...................................................................................................12

*Solis v. Washington,*
   656 F.3d 1079 (9th Cir. 2011)...................................................................................12

**FEDERAL STATUTES**

29 U.S.C. §§ 206...............................................................................................................7, 19

29 U.S.C. § 207.................................................................................................................7, 19

29 U.S.C. 213(a)(3) ....................................................................................................... passim

29 U.S.C. § 216...........................................................................................................2, 7, 19

**CALIFORNIA STATUTES**

California Health & Safety Code § 18897 ...............................................................2, 7, 17, 18

California Labor Code § 1182.4.................................................................................2, 17, 18

**RULES**

Fed. Rules of Civ. Proc. 56(a) and 56(b) ...................................................................................2

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

DEFENDANT'S NOT. OF MTN AND MTN FOR PARTIAL SUMMARY
JUDGMENT; MEMO. OF P&A; CASE NO. 3:12-CV-00982-EMC

FRCP 56(a) .................................................................................................................7

**REGULATIONS**

29 C.F.R. § 779.23 (2012)...........................................................................................12

29 C.F.R. § 779.303 (2012)...........................................................................................9

**OTHER AUTHORITIES**

DOL Field Operations Handbook, § 25j00(b), 4/15/94 .................................................14

DOL Field Operations Handbook, § 25j01(b), 4/15/94 .................................................16

Wage and Opinion Letter, Sept. 28, 2006, FLSA2006-37.............................................12

Wage and Hour Opinion Letter, Jan. 14, 2009, FLSA 2009-5 ......................................16

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

DEFENDANT'S NOT. OF MTN AND MTN FOR PARTIAL SUMMARY
JUDGMENT; MEMO. OF P&A; CASE NO. 3:12-CV-00982-EMC

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

3      This partial motion for summary judgment concerns the application of a specific FLSA

4   minimum wage and overtime exemption to Defendant Adventures Rolling Cross Country, Inc.

5   ("ARCC"), and the definition of an "organized camp" under the California's Health and Safety

6   Code and Labor Code.  ARCC is a trip and travel camp and qualifies as an "organized camp"

7   under the FLSA and California law.  Like dozens of other trip and travel camps in the United

8   States, ARCC offers extended seasonal overnight camps in which student campers travel to

9   domestic and international destinations and participate in traditional summer camp activities, like

10   boating, hiking, and camping outdoors.  The only difference between ARCC and traditional

11   sleep-away summer camps is that ARCC's student campers and the camp counselors (called Trip

12   Leaders) do not stay at one campground or location for their entire stay.  Rather, as holds true for

13   all trip and travel camps, ARCC's campers and Trip Leaders participate in multi-week

14   recreational activities, outdoor education, and community service projects across the globe.  Trip

15   and travel camps are recognized by the camping industry as summer resident camps for youth,

16   including by the American Camp Association, an organization that accredits trip and travel

17   camps.  The American Camp Association advertises ARCC and other trip and travel camps on its

18   website.  Like traditional summer organized camps which are unquestionably exempt from

19   minimum wage and overtime laws under the FLSA "Camp Exemption," ARCC offers its campers

20   lodging, food, and a sustained program of recreational and educational events which are closely

21   supervised by trained leaders.

22      Plaintiffs Peter Wright and Michelle Trame have filed a class and collective action

23   complaint in which they contend that ARCC and ARCC's President, Scott von Eschen, have

24   violated California and federal employment wage laws.[2]  The named Plaintiffs in this action are

25   two former Trip Leaders for ARCC who led ARCC's summer trip and travel camps.[3]  As

26

27   [2] Plaintiffs have not yet filed a motion seeking to certify the class action.

28   [3] The parties have agreed to file cross motions for summary judgment focusing only on the question of the statutory exemptions to the minimum wage and overtime laws.

1

1  demonstrated below, because ARCC is an organized camp, it qualifies for the minimum wage and

2  overtime exemptions applicable to organized camps under the FLSA.  Accordingly, ARCC

3  requests that the Court enter partial summary judgment on two issues.  First, ARCC asks the court

4  to enter judgment in its favor on Plaintiffs' Fourth Cause of Action for violation of the FLSA[4]

5  because ARCC is exempt from overtime and minimum wage requirements under the federal

6  exemption for an amusement or recreational establishment or an organized camp.  This

7  exemption wholly bars Plaintiffs' claim for a violation of the FLSA in their Fourth Cause of

8  Action.

9        Second, ARCC requests that this Court enter partial summary judgment as to Defendants'

10  First Affirmative Defense because ARCC is exempt from the applicable minimum wage and

11  overtime laws on the basis that it is an "organized camp" as defined by California Health &

12  Safety Code Section 18897 and for the purposes of potential application of the exemption under

13  California Labor Code Section 1182.4.  See Fed. Rules of Civ. Proc. 56(a) and 56(b).

14  **II.  STATEMENT OF FACTS**

15      **A.  An Overview of ARCC's Adventure Trip And Travel Summer Camps.**

16        ARCC is an organization that offers adventure and experience trip and travel camps for

17  teenagers.  (Declaration of Scott von Eschen, (hereafter "von Eschen Decl."), filed concurrently

18  herewith, at ¶¶3, 18.)   Founded in 1983, ARCC gives teenagers the opportunity to participate in

19  various summer camp activities, including backpacking, camping, whitewater rafting, learning a

20  foreign language abroad, or completing community service projects.  (Id. at ¶¶2, 3.)

21        ARCC, as with any other trip and travel adventure camp, is different from a more

22  traditional camp setting only in that its activities do not occur in one fixed, stationary location.

23  (Id. at ¶¶6.)  Rather, from its location in Mill Valley, California where ARCC has been since

24  1999, it operates approximately 50 domestic and international travel camp programs each year,

25  most often between the months of June and August.  (Id. at ¶¶2, 7.)  A large majority of ARCC's

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

---

26  [4] Specifically, ARCC seeks partial summary judgment on Plaintiffs' Fourth Cause of Action which seeks damages
for violation of the Fair Labor Standards Act, Section 206 (minimum wage requirements) and Section 207 (overtime
27  requirements for working more than 40 hours a week.  In their Fourth Cause of Action, Plaintiffs seek remedies
available under Section 216 of the FLSA, which authorizes the recovery of penalties, attorneys' fees, and damages
28  for failure to pay overtime and minimum wages.

2

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1  trips occur outside the United States – in Asia, Africa, Europe, Australia, and Central and South

2  America.  (Id. at ¶10.)  ARCC reserves campgrounds at various locations or has longstanding

3  relationships with certain villages in, for example, Fiji or Costa Rica, for its participants to visit,

4  camp, study a foreign language, and participate in community service projects.  (Id. at ¶11.)  (The

5  foreign portion of ARCC's operations is not a remaining subject of this action, as the Court has

6  previously held.[5])  For domestic trips, the campers stay in owned campgrounds in California,

7  Hawaii, Colorado, and Utah.  (Id. at ¶10.)

8       ARCC's adventure trip and travel summer camps last between two and five weeks.  (Id. at

9  ¶4.)  ARCC offers three different types of trip and travel camps: multisport, service, and

10  language.  (Id. at ¶13.)   All three types of camps share a focus on outdoor recreational activities

11  and outdoor education.  (Id. at ¶13.)

12       On ARCC's multisport trip and travel camp, the student campers (and the Trip Leaders

13  who lead these trips) partake in a number of recreational activities.  They backpack, kayak, hike,

14  camp, rock climb, and go whitewater rafting.  (Id. at ¶14.)  Throughout each adventure, Trip

15  Leaders set aside time to teach classes on such topics as marine biology, map and compass

16  techniques, route finding and navigation, first aid, geology, weather, astronomy, and the natural

17  history of the areas visited.  (Id. at ¶14.)  ARCC actively teaches Leave No Trace, a national

18  education program that promotes responsible travel in wilderness areas.  (Id. at ¶14.)  Students

19  also learn skills like leadership, teamwork, and group decision-making that are valuable for those

20  entering college.  (Id. at ¶14.)  On service trips, campers participate in community projects

21  supporting such organizations as Habitat for Humanity, the Glide Foundation, the Golden Gate

22  Conservancy, and the Truckee Donner Land Trust, or comparable projects and organizations in

23  other countries.  (Id. at ¶15.)  They also engage in recreational activities like kayaking, biking,

24  and hiking, all while returning to campgrounds or community living settings each day.   (Id. at

25  ¶¶15, 17.)  The language trip and travel camps allow campers to study a foreign language in

26  another country, again while also participating in traditional summer camp activities, such as

27

28  [5] See ECF Document 22, filed 5/3/12, Court's Order granting in part and denying in part Defendants' Motion to Dismiss.

3

1  sailing and rafting. (Id. at ¶16.)  All campers in ARCC's programs sleep outdoors in local

2  campgrounds exclusively on domestic trips. (Id. at ¶17.)  Additionally, students on California

3  trips stop at ARCC's Mill Valley facility during their trips. (Id. at ¶17.)  International trips

4  include homestays or similar local culture contact for some nights. (Id. at ¶17.)

5       ARCC's trips are co-ed; generally, there are approximately 12 to 20 teenagers for each

6  trip. (Id. at ¶8.)  The students are further grouped by age on specific ARCC trips to maximize the

7  group dynamic. (Id at ¶8.)  Through its highly-structured camps and trip itineraries, ARCC

8  strives to offer the same summer camp bonding experience that a student would enjoy if they

9  went to a sleep-away camp at a remote lake for three weeks, but instead through an adventurous

10  trip and travel experience. (Id. at ¶19.)

11     **B.**     **The Role Of ARCC'S Trip Leaders**

12       Each travel camp is led by either two or three Trip Leaders. (Id. at ¶9.)  Trip Leaders

13  must be at least 21 years-old and are generally either college students or graduates who are

14  working at ARCC as a summer job. (Id. at ¶¶9, 18.)  The average age of a Trip Leader is 23 or 24

15  years-old. (Id. at ¶18.)  Trip Leaders work on a seasonal basis, leading the trip and travel camps

16  almost exclusively during the summer months. (Id. at ¶18.)  A significant number of Trip

17  Leaders return to work for ARCC for more than one summer. (Id. at ¶18.)  Each ARCC Trip

18  Leader must have a minimum of 80 hours of training in Emergency Wilderness Medicine and

19  many are Emergency Medical Technicians with over 120 hours of emergency medical training.

20  (Id. at ¶20.)  ARCC assists those lacking the requisite emergency wilderness first aid training to

21  obtain it before leading its trips. (Id. at ¶20.)

22       Trip Leaders spend a combined total of approximately 10-14 days in pre-camp training

23  and preparatory sessions and post-camp debriefing at ARCC. (Id. at ¶21.)  ARCC's pre-trip

24  training occurs at ARCC's Mill Valley facility, as well as at Mount Tamalpais State Park and Salt

25  Point State Park. (Id. at ¶22.)  In the training sessions, ARCC prepares Trip Leaders to be far

26  more than attendants or adult supervision for simple travel.  Instead, it educates the Trip Leaders

27  on group dynamics, how to handle various types of emergencies or problematic behavior that may

28  arise with the campers, teaching opportunities that will arise during each trip, and specific

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1   instructions on the avoidance of risky behavior among the campers.  (Id. at ¶¶21, 23.)  ARCC's

2   staff reviews trip logistics with the Trip Leaders including the details of how the Trip Leaders and

3   campers will travel to each destination within the trip camp.  (Id. at ¶¶24, 25.)  Trip Leaders also

4   receive training and education about the local culture of their trip's destinations so that the Trip

5   Leaders can effectively share this information with the students during the trips.  (Id. at ¶¶21, 24,

6   26.)  Since a primary activity of the camp experience for the student campers is leadership

7   development and group dynamics, the staff also conducts classes for Trip Leaders on these topics

8   to maximize their ability to share this curriculum while on the trip.  (Id. at ¶¶21, 24.)  Trip

9   Leaders receive instruction on ARCC's trip budgets and information as to where the hospitals and

10   other emergency services are located, and the logistics of ARCC and recreational vendor contact

11   at each location.  (Id. at ¶24.)  The itineraries also direct the Trip Leaders how often and when to

12   contact ARCC during the trip.  (Id. at ¶24.)

13        As the sample itineraries demonstrate, Trip Leaders are fully engaged in teaching and

14   recreational activities throughout the trips.  (Id. at ¶¶25, 26.)  The teaching/learning opportunities

15   are daily, and these Trip Leaders are applying the training they receive before the programs begin.

16   (Id. at ¶¶21, 25, 26.)  They are far more than chaperones, babysitters, ticket takers, or porters.

17        At the end of the trip, Trip Leaders also attend a post-trip debriefing for two days at

18   ARCC's Mill Valley location.  (Id. at ¶27.)  During the debriefing, Trip Leaders discuss the

19   campers' participation and involvement during the trip.  (Id. at ¶27.)  Trip Leaders also review the

20   performance and leadership abilities of their co-Leader(s) in a meeting with ARCC's Regional

21   Director.  (Id.)  They inform the Regional Director of any logistical changes that may be

22   necessary to the trip itinerary based upon their experience.  (Id. at ¶27.)  Trip Leaders personally

23   evaluate ARCC's training and offer suggestions.  (Id. at ¶27.)  ARCC pays its Trip Leaders a

24   stipend at the end of the trip. (Id. at ¶28.)

25   **C.**     **ARCC Operates As A Summer Camp.**

26        ARCC's employees and the teenagers who enroll each summer have always considered

27   ARCC a summer camp, and ARCC has consistently presented itself to the community as a

28   summer camp.  (Id. at ¶¶29-37.)  ARCC is a member of the American Camp Association (ACA),

and is listed under the "Find A Camp" section of the ACA website.  (Id. at ¶29.)  In its list of camps to "find" on its website, the ACA offers a specific category for "trip and travel camps" among other selections as "resident camps" and "day camps."  (Id. at ¶29.)  ARCC also partners with "camp ladies," or independent consultants working nationwide who help parents locate an appropriate summer camp for their child.  (Id. at ¶35.)

To recruit Trip Leaders, ARCC attends college and university job fairs across the country each spring and presents itself as a summer camp seeking camp counselors.  (Id. at ¶36.)  ARCC also participates in regional camp fairs, such as the Summer Opportunities Fair in St. Louis, Missouri and the New York Family Camp Fair in upstate New York, to advertise and introduce its camps to prospective campers.  (Id. at ¶37.)  ARCC is insured by Markel Rhulen Specialty Insurance through its specific Camp Insurance Division and ARCC's premiums are based on the number of "camper" days per season.  (Id. at ¶38.)  Further, ARCC advertises on numerous camp websites, including camppage.com, campresource.com, teensummercamp.com, campchannel.com, and summercamps.com.  (Id. at ¶¶30-34.)  Lastly, ARCC has always offered its camp programs for teenagers only; not adults.  (Id. at ¶8.)

### D.    ARCC Operated As An Organized Camp For Less Than Seven Months In Each Calendar Year.

In 2008, 2009, and 2010, ARCC operated as an organized camp for less than three months each calendar year.  (Id. at ¶¶39-44.)  In both 2011 and 2012, it began offering a "Gap program" for high school graduates on a limited basis consisting of a 90-day extended community service program, now offered in Africa, Asia or Latin America.  (Id. at ¶7.)  Even considering its fall Gap programs, ARCC operated as an organized camp for six months or less.  (Id. at ¶¶42-43.)  During the off-season, or when trip and travel camps are not in progress, ARCC markets its camps to teenagers, develops and updates the camp itineraries, travels to new locations to explore the creation of new domestic and international travel camps, and attends college and university job fairs to find new Trip Leaders.  (Id. at ¶44.)

### E.    ARCC's Average Receipts For Calendar Years During The Statutory Time Period.

ARCC has determined its average receipts for the application of the overtime and

6

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1    minimum wage exemption under the Fair Labor Standards Act.  (Id. at ¶45.)  The percentage of

2    average monthly receipts for the smallest six-months of ARCC's revenues as compared to the

3    largest six-months of its revenues were 6% for calendar year 2008, 7% for 2009, 12% for 2010,

4    3% for 2011, and 21% for 2012.  (Id. at ¶45.)

5    **III.    LEGAL ARGUMENT**

6          **A.    Partial Summary Judgment Standard**

7          The Court may grant partial summary judgment in the party's favor on each claim or

8    defense, or the part of each claim or defense, on which summary judgment is sought.  FRCP 56(a).

9    FRCP 56(a) specifically provides for summary judgment on part of each claim or defense.  See

10   *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999) (a district court may dispose of a

11   particular claim or defense by summary judgment when one of the parties is entitled to judgment

12   as a matter of law on that claim or defense).

13         Defendants here seek partial summary judgment as to one claim – Plaintiffs' Fourth Cause

14   of Action for violation of Sections 206, 207 and 216 of the FLSA – based on the statutory

15   exemption available to organized camps found at 29 U.S.C. 213(a)(3).  Defendants also seek

16   summary judgment on their First Affirmative Defense on the basis that they are entitled in wage

17   and hour exemptions because ARCC is an "organized camp" as defined in Section 18897 of the

18   California Health & Safety Code.[6]

19         **B.    ARCC is Exempt from the Minimum Wage and Overtime Requirements of
           the Fair Labor Standards Act.**

20

21         Because ARCC meets the amusement, recreational, or organized camp exemption in the

22   FLSA, there can be no liability to ARCC for violations of this Act as Plaintiffs allege in their

23   Fourth Cause of Action.  (See Cmplt., ECF Document 1, Filed 2/27/29, pp. 11-13, ¶¶57-65.[7])

24   Section 213(a)(3) of the FLSA provides a complete exemption to the minimum wage and

---

[6] Defendants' First Affirmative Defense states, "Defendants were at all relevant times exempt from the applicable minimum wage, overtime, and other wage and hour laws, including without limitation pursuant to the exemptions afforded to an employer that is an organized camp."  See Defendants' Amended Answer, ECF Document 67, Filed 6/21/12, p. 14, ¶93.

[7] The caption of Plaintiffs' Complaint provides that their FLSA claim is the Eighth Cause of Action.  However, in the body of their Complaint, the factual assertions and legal allegations supporting Plaintiffs' FLSA claim may be found below the "Fourth Cause of Action – Failure to Pay Overtime and the Minimum Wage In Violation of Federal Law."

7

DEFENDANT'S NOT. OF MTN AND MTN FOR PARTIAL SUMMARY
JUDGMENT; MEMO. OF P&A; CASE NO. 3:12-CV-00982-EMC

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1  overtime requirements of the FLSA:

2      "For any employee employed by an establishment which is an
       amusement or recreational establishment, organized camp, or
3      religious or non-profit educational conference center, if:

4          (A)    it does not operate for more than seven months in any
                  calendar year, or
5
           (B)    during the preceding calendar year, its average receipts for
6                 any six months of such year were not more than 33 1/3 per
                  centum of its average receipts for the other six months of
7                 such year …" 29 U.S.C. §213(a)(3).

8      ARCC is both an "organized camp" and a recreational establishment and meets both Test

9  (A) and Test (B); it therefore falls within the FLSA exemption from minimum wage and overtime

10 requirements.

11                    1.    **The Purpose Of The FLSA Exemption.**

12     No court, in any published decision, has determined if a trip and travel camp like ARCC

13 cannot meet this exemption, and available legislative history does not offer specific direction.

14 However, ARCC's operations as a trip and travel camp for teenagers and its employment of

15 young people as camp counselors and trip leaders fit squarely within the legislative rationale for

16 this exemption.  The Tenth Circuit has found that the purpose of this FLSA exemption was "to

17 allow recreational facilities to employ young people on a seasonal basis and not have to pay the

18 relatively high minimum wages required by the Fair Labor Standards Act."  *Brennan v.*

19 *Yellowstone Park Lines,* 478 F.2d 285, 288 (10th Cir. 1973).  The "logical purpose" of the

20 exemption, according to the Sixth Circuit, was "to exempt the type of amusement and recreational

21 enterprises listed above, which by their nature, have very sharp peak and slack seasons.  These

22 businesses argue that they should not be held to the same wage and hour requirements as

23 permanent year-round operations.  Their particular character may require longer hours in a shorter

24 season, their economic status may make higher wages impractical, or they may offer non-

25 monetary rewards.  Congress responded to these concerns by enacting the amusement and

26 recreational exemption."  *Brock v. Louvers and Dampers, Inc.,* 817 F.2d 1255, 1258 (6th Cir.

27 1987).

28     The stated purpose of this exemption is to allow recreational facilities to employ young

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

8

1   people on a temporary, seasonal basis and offer non-monetary benefits. *Brennan, supra,* 478 F.2d

2   285, 288-289.  ARCC's business plainly meets the purpose of the exemption as explained in

3   *Brennan.*  Plaintiffs work on a seasonal basis, primarily during three months in the summer.  (von

4   Eschen Decl. at ¶¶39-44.)  Plaintiffs are certainly considered "young people."  A Trip Leader

5   must be at least 21 years-old, and the average age of ARCC's trip leaders is 23 or 24 years-old.

6   (Id. at ¶9.)  The nature of Plaintiffs' work as Trip Leaders necessarily requires longer hours

7   during the summer season.  (Id. at ¶17.)  Further, the summer trips are only two to five weeks

8   long.  (Id. at ¶12.)  ARCC does not employ regular Trip Leaders throughout the year, and only

9   hires (or re-hires) Trip Leaders for the summer and Gap programs.  (Id. at ¶18.)  The Trip Leader

10  position is designed to necessitate longer hours within a short-term assignment.  (Id. at ¶18.)

11  Lastly, ARCC offers non-monetary rewards to Trip Leaders inasmuch as they get free travel, free

12  housing and board, extensive outdoor education, and the opportunity to participate in recreational

13  and educational activities, such as safaris and whitewater rafting, in foreign and domestic

14  locations at no cost to them.  (Id. at ¶28.)   In sum, the nature of ARCC's business and Plaintiffs'

15  work for ARCC falls within the rationale for the exemption.

16         **2.   ARCC Is An "Establishment" For The Purposes of The Exemption.**

17       The exemption in Section 213(a)(3) applies to "any employee employed by an

18  establishment which is an amusement or recreational establishment, organized camp, or religious

19  or nonprofit educational center."  29 U.S.C. §213(a)(3). The FLSA does not define

20  "establishment."  Rather, as the term is defined by the regulations issued by the Secretary of

21  Labor, "establishment" means a distinct physical place of business.  29 C.F.R. §779.303 (2012).

22       Plaintiffs will likely contend that ARCC is not an establishment because it runs trips all

23  over the world and, therefore, lacks a "distinct physical place of business."  In essence, Plaintiffs

24  contend that ARCC is not entitled to the FLSA exemption because it offers trip and travel camps

25  rather than stationary overnight camps in which campers sleep in a bunkhouse for two weeks at a

26  lake or in the mountains.  Plaintiffs' argument ignores the purpose of this exemption and instead

27  focuses on form over substance.

28       Plaintiffs' argument is faulty for two reasons.  First, ARCC maintains a distinct physical

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

9

place of business in Mill Valley, California.  ARCC has been operating its trips from its Mill

Valley location since 1999.  (von Eschen Decl. ¶2.)  Trip Leaders certainly "work" in Mill Valley

for 10-14 days when they undergo pre-camp training and post-camp debriefing.  (Id. at ¶¶21-27.)

During the relevant statutory period, Plaintiffs, and other Trip Leaders, began their employment

at Mill Valley during the eight to 12-day pre-camp training, and ended their employment at Mill

Valley when they returned for a two-day debriefing following their completion of their trip and

travel camp.  (Id. at ¶¶21-27.)  Trip Leaders all leave from Mill Valley to lead various excursions

and participate with the campers in a variety of recreational and educational activities.  (Id. at

¶¶21, 24.)  Thus, ARCC has a distinct physical place of business.  It is not a transitory or fleeting

operation, but has operated camps for thirty years.  (Id. at ¶¶2, 3.)

Second, Plaintiffs' argument erroneously focuses on an unsupported belief that ARCC, to

be an organized camp, must have Plaintiffs work at one single, physical and static site.  Plaintiffs

cannot offer any statutory or judicial authority for this principle.

No court has had the occasion to consider the application of the recreational and

amusement or organized camp exception to camp counselors or trip and travel camps.  Courts,

however, in considering analogous circumstances, have applied the exemption to maintenance

employees working at various businesses on a fairground. *Hamilton v. Tulsa County Public

Facilities Authority*, 85 F.3d 494 (10th Cir.1996) is instructive.  The employer in *Hamilton* was

TCPFA, a public trust which managed the Tulsa County Fairgrounds.  *Id.* at 496.  TCPFA's

primary purpose was to establish, provide, maintain and promote recreational centers, agricultural

and industrial expositions, fairs, trade shows and other recreational facilities and activities.  The

employees were maintenance workers for TCPFA and sought unpaid overtime under the FLSA.

TCPFA argued that the Section 213(a)(3) recreational and amusement exemption applied such

that workers were not entitled to overtime pay.  *Id.*  The employees claimed TCPFA did not meet

the requirement of a single "establishment" under the recreational and amusement exemption

because they worked at various businesses on the fairgrounds and those businesses constituted

separate establishments.  *Id.*

The Tenth Circuit rejected the employees' argument.  *Id.* at 497.  Although there were

10

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1   various businesses on the fairgrounds, the Court focused on the fact that TCPFA did not own or

2   operate those other businesses.  *Id.* at 497-498.  TCPFA simply leased the property to other

3   businesses.  Therefore, the issue was solely whether TCPFA was an amusement or recreational

4   establishment itself.  *Id.* at 498.  TCPFA, the Court held, managed the fairgrounds as an

5   establishment under the exemption.  And, because TCPFA's primary purpose was to establish,

6   provide, maintain, and promote recreational centers, agricultural and industrial expositions, fairs,

7   trade shows, and other recreational facilities and activities, it was an amusement and recreational

8   establishment within the meaning of Section 213(a)(3) and its employees were exempt from the

9   FLSA.  *Id.*

10          The Court may utilize the same reasoning in this instance.  ARCC does not own or operate

11   the campgrounds, remote villages, or other destinations which Plaintiffs and the campers visit.

12   ARCC has maintained a physical establishment – its location in Mill Valley – since 1999.  (von

13   Eschen Decl. at ¶2.)  It has operated its trip and travel camps from its Mill Valley site for years.

14   Trip Leaders come to ARCC in Mill Valley for comprehensive, pre-trip training that lasts over a

15   week and involves classroom education, instruction on group dynamics and working with

16   teenagers, and a detailed review of the trip's itinerary.  After extensive training and preparations

17   with ARCC staff, the Trip Leaders leave ARCC's Mill Valley site to lead the trip and travel

18   camps.  Trip Leaders later return to Mill Valley at the conclusion of their trips to debrief ARCC's

19   staff about the student campers and logistics of the trips. (Id. at ¶¶21-24, 27.)

20          3.   **The Principal Activities of ARCC Are Recreational and Those Of An**

21              **Organized Camp.**

22          The "principal activity" of an employer is a key factor in determining if the FLSA

23   exemption applies.  To determine if an employer meets the FLSA exemption, many courts focus

24   on the employer's principal activity.  For example, in *Brennan v. Texas City Dike & Marina, Inc.*,

25   492 F.2d 1114 (5th Cir. 1994), the court found that a marina did not qualify as a recreational or

26   amusement establishment because the marina's principal activity was selling recreational

27   equipment, not providing recreation.  *Id.* at 1118.  The marina sold products, like marine

28   hardware and convenience items, and performed a variety of boat maintenance activities.  *Id.*

11

1   Because the marina principally provided recreational means and facilities for boat enthusiasts, it

2   argued that it was a recreational establishment and exempt from overtime and minimum wage

3   laws.  *Id.*  The court found that since the marina's activities were multifaceted, its principal

4   activity should be determinative of the marina's eligibility for an exemption.  *Id.*

5          Undoubtedly, ARCC's primary purpose and principal activity is the development and

6   operation of recreational opportunities and organized camps for teenagers.  The legal authorities

7   instruct the court to focus on the heart and essence of ARCC's business – the operation of

8   adventure camps – to find that this exemption applies.

9          The Wage and Hour Administrator (WHA) of the Department of Labor found that an

10  employer running an "adventure" qualified for the recreational and amusement exemption.  In a

11  2006 Opinion Letter, the WHA concluded that employees of a nonprofit educational organization

12  which provided "wilderness base camps" were exempt from Section 213(a)(3). The employer in

13  that instance had seven different schools operating 45 "base camps" offering outdoor expeditions

14  across North America.  The WHA did not define or explain what a base camp was, other than to

15  note the camps were "wilderness" and operated on a seasonal basis.  The expeditions included

16  white-water rafting, dog sledding, skiing and canoeing.  The WHA applied a three-step analysis

17  to determine if the employees were covered by the exemption. The first step was to determine

18  whether the seven different schools and 45 base camps qualified as separate establishments or

19  whether the employer was to be considered a single establishment.  The WHA looked to the DOL

20  regulations that define "establishment" as a physical distinct place of business, rather than an

21  entire business or enterprise which may include separate places of business. 29 C.F.R. §779.23

22  (2012).  It then declared that the employer's separate base camps were physically remote from

23  one another and, therefore, separate establishments under 29 C.F.R. §779.23.[8]  The WHA also

24  found that the primary activities were traditional recreational activities such as hiking, rafting, and

25  skiing, and concluded that the exemption applied.  See Wage and Opinion Letter, Sept. 28, 2006,

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

---

26  [8] The Ninth Circuit has accorded the Department of Labor's opinion letters deference.  See *Solis v. Washington,* 656

27  F.3d 1079, 1085 (9th Cir. 2011) ("The DOL's interpretation of its own regulations generally is accorded controlling deference 'unless plainly erroneous or inconsistent with the regulation.'")  See also *Skidmore v. Swift & Co.,* 323 U.S.

28  134, 140 (1944) (DOL's rulings are not binding on the courts, but constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance).

12

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1  FLSA2006-37.

2         Similarly, ARCC operates trip and travel camps at different wilderness or related locations

3  across the world.  The DOL regulations do not require that the recreational or camp exemption

4  only apply when there is one physical location.  The regulations do not require that the enterprise

5  own a location.  In looking at the issue of "establishments," the courts do not consider if a

6  physical location is fixed or transitory.  The wilderness base camp situation is instructive.  The

7  anticipated activities – which can include rock climbing, exploring, mountaineering, etc. – are

8  cross country-type activities.  They take place away from the base camp.   Base camp is a location

9  from which you leave to have experiences away from the base camp, whether or not you return

10  before the end of the camp program.  It would make absolutely no sense if the exemption turned

11  on the existence of a location at which the camp employees and campers may spend virtually no

12  time.

13         The same is true as to ARCC.  What is, and should be, pertinent in determining if the

14  exemption applies is whether the principal activity of the establishment is recreational in nature.

15  Are the activities those expected of an organized camp?  Here, ARCC's sole design for the last 30

16  years is to offer recreational and educational activities in adventure trip and travel camps.  (von

17  Eschen Decl. at ¶¶2, 3, 7.)  The activities comprising these adventures are clearly customary

18  summer camp and recreational activities:  backpacking, hiking, rafting, surfing, and sailing, as

19  well as service projects and learning a foreign language, to name a few.  (Id. at ¶¶12-17.)  There

20  are certainly "traditional" camps specializing in all of these activities.  If a traditional camp – with

21  cabins and a swimming pool – decided to offer only trip adventures into the wilds around the

22  camp, and as they started their treks, the campers stayed for a single day at the camp's cabins

23  (now just a base camp), but never returned, the exemption would presumably apply.  There is a

24  fixed, physical location and outdoor-centered activities.  So too, if ARCC had tents and a fire

25  circle in Mill Valley and campers all left from that location on the California-based trips, the

26  exemption presumably would apply.  ARCC in its present form should not be considered any

27  differently.

28  //

13

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1   **4.   ARCC Is An "Organized Camp" Under The FLSA Exemption.**

2   No court has explained what constitutes an "organized camp" under Section 213(a)(3).[9]

3   However, the Field Operations Handbook (FOH) published by the Department of Labor offers

4   some guidance.  The Handbook states an organized camp […]

5   "characteristically provides room and board in a rustic setting over
     a sustained period of time.  An 'organized camp' is one with a
6   program of activities and sustained supervision, provided for a set
     fee.  The American Camping Association defines a 'camp' as a
7   'sustained experience which provides a creative recreational and
     educational opportunity in group living out of doors.  It utilizes
8   trained leadership and the resources of natural surroundings to
     contribute to each camper's mental, physical, social, and spiritual
9   growth.'"  *DOL  Field Operations Handbook*, §25j00(b), 4/15/94.

10   Notably, the DOL relied upon the ACA's[10] definition of a "camp."  And although this

11   section from the FOH was published in 1994, before the significant growth of the trip and travel

12   camps in the camping industry, the ACA definition already states that camp is a "sustained

13   experience," -- not a sustained *location*.  This reference to the ACA is additionally significant

14   since the ACA identifies specific standards for trip and travel camps, like ARCC.  The ACA's

15   camp standards[11] expressly recognize trip and travel programs as included in the definition of a

16   "resident camp:"

17   Resident camps: Sessions vary in length. The program is operated
     and staffed by the camp, and the supervision of individual campers
18   is a camp responsibility. Campers stay overnight, and camp is
     responsible for campers 24 hours a day.  Trip-and-travel camp
19   programs are resident camp programs, last three nights or more, and
     often ***do not have a base location.*** Trip-and-travel program
20   activities are ***based upon environments encountered as the group
     moves from location to location***. Such programs run as an
21   extension of resident or day camp or may be an exclusive trip-and-
     travel camp, specializing in only trip, travel, or tour programs.
22   (emphasis added)

23   The ACA has also established specific standards for trip and travel programs.  Under the

---

24   [9] In one of the only decisions regarding the "organized camp" criteria of the exemption, *McMillan v. BSA-Aloha
25   Council,* 2012 U.S. Dist. LEXIS 83346 (D. Haw. 2012), the parties agreed that the employer was an "organized
     camp."  Thus, the court had no reason to analyze whether the employer, the Boy Scouts, was an organized camp
26   under Section 213(a)(3).
     [10] The DOL refers to the "American Camping Association."  The American Camping Association, however, changed
27   its name in 2004, and is presently called the American Camp Association.  Both are referred to herein as the ACA.
     There is no organization called "American Camping Association."
28   [11] The American Camp Association's standards are attached to the Declaration of Scott von Eschen as Exhibit J,
     ¶¶46-47.

14

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1  section labeled "Applicability," the following appears:

> The trip and travel standards apply to any program conducted or sponsored by the camp in which the group moves from one site to another for THREE NIGHTS OR MORE.  In backcountry and wilderness tripping, individuals move under their own power or by individually guided vehicle or animal (e.g., bicycle, horse, canoe).  In travel camping, a group uses motorized transportation (e.g., van, bus, car, plane) to move from one site to another for experiences in different environments.  Typically, three types of camps will score the trip and travel standards:
>
> 1.  Exclusive trip or travel camps, whose singular specialty is trip or travel camping.  Often these programs have no permanent base site and do not score the site and food service standards.
>
> 2.  Resident camps who offer trips of three nights or more as one of their program options.
>
> 3.  Day camps who offer trips of three nights or more as a special program option, of for experienced or older campers. (capitalization in original).

13    Quite simply, if the ACA considers trip and travel camps as resident "camps" in its own

14  standards, then the Court may find that ARCC is an "organized camp" as defined in the DOL

15  Field Operations Handbook.

16    ARCC also meets the remainder of the FOH definition of "camp" as it operates camp

17  programs offering an abundance of recreational and educational opportunities.  The students

18  backpack, hike, kayak, and sail – all traditional summer camp recreational activities.  They also

19  gain an outdoor education, which may include learning how to read a map, how to use a compass,

20  or how to cook with camping equipment.  The student campers cook outdoors and sleep in tents

21  or underneath the stars.  They may camp in a variety of "rustic" settings such as alongside a river,

22  on a beach, or at a campground.  (Id. at ¶¶14, 17.)  To that point, the FOH does not describe that

23  an organized camp must provide the room and board in a rustic setting at one single location.

24  ARCC's programs are designed to offer physical, mental and social growth through leadership

25  activities and traditional camp activities.  (Id. at ¶¶13-16.)  The student campers are under the

26  sustained supervision of Trip Leaders extensively trained by ARCC at its Mill Valley location on

27  leadership activities, emergency preparedness, and group dynamics.  (Id. at ¶¶19, 21, 24.)  All

28  components of the definition are satisfied.

15

5.     **ARCC Satisfies Both Test (A) And Test (B) Of The Exemption.**

The Department of Labor has stated that an "organized camp" will be exempt under the FLSA Camp Exemption if it meets Test (A) or Test (B). An organized camp only needs to meet one of these tests to fall within the exemption. Test (A) is that the entity "does not operate more than seven months in any calendar year." The DOL has stated that whether a camp operates during a particular month requires a determination of whether ARCC "operates" as an organized camp for more than seven months. According to the DOL, if an establishment engages in activities such as maintenance operations or ordering supplies during the "dead season," then it is not considered to be "operating" for purposes of the FLSA Camp Exemption. See *DOL Field Operations Handbook*, §25j01(b), 4/15/94. See also Wage and Hour Opinion Letter, Jan. 14, 2009, FLSA 2009-5 (finding that organizations that employ lifeguards, beach comfort station attendants and beach maintenance crews, if they meet the seven-month seasonal test, may treat such employees as exempt. An employee does not lose his or her exempt status by working for such an establishment for more than seven months for a year – for example, maintaining equipment – as long as the beach or other establishment is not open as a recreational facility for longer than seven months).

Here, ARCC runs its trip and travel camps from June to August each calendar year. Trip leaders visit ARCC for pre-trip training in June and the various adventure trips are staggered to occur throughout the months of June, July, and August. In the last two calendar years, ARCC has also offered trip and travel "Gap programs" in the fall season. Combined, ARCC does not provide trip and travel camps for more than seven months in a calendar year. (Id. at ¶¶39-43.) During the off-season, ARCC markets its trips to campers, travels to university summer fairs to recruit Trip Leaders, adjusts the itinerary of the trips and travel camps, and tweaks the training sessions for the Trip Leaders. (Id. at ¶44.)   ARCC does not, however, operate the trip and travel camps during the off-season. (Id. at ¶44.)   Since ARCC operates camping activities for the teenagers for seven or less months, ARCC clearly meets Test (A).

If ARCC satisfies Test (A), then the Court need not consider if ARCC meets the criteria in Test (B). Nonetheless, ARCC clearly meets the requirements of Test (B) as well. The DOL

16

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1    states that, to determine if Test (B) is met, the monthly average based on total receipts for the six

2    individual months in which receipts were the smallest should be tested against the monthly

3    average for the six individual months when the receipts were largest.  ARCC receives

4    approximately 70% of its revenue between February 1 and July 1 each year, when the student

5    campers book their trips.  (Id. at ¶45.)

6    **C.    ARCC is An Organized Camp Under The California Health & Safety Code**
         **Definition.**

7    ARCC's First Affirmative Defense in its Amended Answer is that ARCC is an organized

8    camp and entitled to the exemptions afforded an organized camp.  ARCC is entitled to a finding

9    by the Court that it is an organized camp under existing California law.  This is a central issue

10   regarding ARCC's defense to Plaintiffs' Third, Fourth, Fifth, Sixth, Seventh and Ninth Causes of

11   Action, all principally related to the contention that ARCC failed to Trip Leaders minimum wage

12   and overtime under state law.  If ARCC is an organized camp according to the definition in

13   California's Health and Safety Code, then ARCC may avail itself of California's exemption

14   applicable to organized camps under California Labor Code §1182.4.[12]

15   For many of the same reasons the FLSA exemption applies, this Court may find as a

16   matter of law that ARCC is an "organized camp," as defined by the California Health and Safety

17   Code.  Section 18897 of the Health and Safety Code provides:

18
19                (a) "Organized camp" means a site with program and facilities
                  established for the primary purposes of providing an outdoor group
20                living experience with social, spiritual, educational, or recreational
                  objectives, for five days or more during one or more seasons of the
21                year.[13] (Cal. Health & Safety Code §18897).

22   Section 18897 was written in 1961, well before ARCC and others like it offered trip and

23   travel camps.  The Legislature has not amended Section 18897 with respect to the definition of an

24   [12] California Labor Code Section 1182.4 (the "California Camp Exemption") provides, in part, that no camp
     counselor of an organized camp is subject to a minimum wage order if the counselor receives at least 85% of the
25   minimum wage for a 40-hour workweek.  An "organized camp" under Labor Code Section 1182.4 means an
     organized camp, as defined in Section 18997 of the Health and Safety Code, which also meets the standards of the
26   American Camp Association.
     [13] The remainder of Section 18897 is not applicable.  Section 18897(b) states an "organized camp" does not include a
27   motel, tourist camp, trailer park, resort, hunting camp, auto court, labor camp, penal or correctional camp and does
     not include a child care institution or home-finding agency.  Section 18897(c) states that an "organized camp" does
28   not include any charitable or recreational organization that complies with the rules of regulations for recreational
     trailer parks.  ARCC clearly does not fall within any of these categories.

17

DEFENDANT'S NOT. OF MTN AND MTN FOR PARTIAL SUMMARY
JUDGMENT; MEMO. OF P&A; CASE NO. 3:12-CV-00982-EMC

1    organized camp since enacting the law over 50 years ago.  Nor has any court analyzed the

2    definition of "site" as used in this statute.  In California Labor Code Section 1182.4, however, the

3    state Legislature has clearly deferred to the standards of the ACA.[14]  Accordingly, the ACA's

4    position on trip and travel camps is both instructive and legally relevant, and as already noted in

5    section III.B.4. above, this Court should confidently turn to that ACA guidance.

6          As the ACA points out, trip and travel camps like ARCC do not necessarily have a single

7    site from which its campers leave and return to each day.  ARCC's trips are outdoor adventures in

8    the environment, where its campers and the Trip Leaders move from location to location.

9    Nonetheless, ARCC still maintains a permanent site in Mill Valley from which it operates its

10   adventure camps and trains its Trip Leaders every year.  Indeed, ARCC has maintained this site

11   for 13 years.  It is not only where ARCC's staff works, it is also a place where ARCC keeps its

12   outdoor equipment, hosts Trip Leaders who often camp in sleeping bags for a few nights while

13   awaiting the commencement of pre-trip training or the beginning of their trip, and welcomes

14   student campers on California trip itineraries.

15         As Section 18897 highlights, ARCC has established programs for the primary goal of

16   offering an outdoor group living experience with social, educational, and recreational objectives

17   for its campers.  There can be no argument that ARCC's primary purpose is to operate trip and

18   travel camps focused on recreational activities, such as hiking, backpacking, kayaking, and

19   sailing.  In addition, the trip and travel camps all offer educational aspects, whether it is

20   leadership and teamwork exercises, wilderness navigation and map reading in the Rockies,

21   cultural or language study, or marine biology on the coast of California.  Based on the plain

22   statutory language of the Health & Safety Code, ARCC meets the definition of an "organized

23   camp."  ARCC is therefore entitled to judgment as a matter of law on its First Affirmative

24   Defense that it is an organized camp under the California Health & Safety Code.

25   IV.   **CONCLUSION**

26         Trip Leaders are supervising and teaching student camper/participants in ARCC's trip and

27   _____

28   [14] California Labor Code §1182.4 states that an organized camp is one which "meets the standards of the American Camping Association."

18

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

1   travel offerings as they are frequently camping outdoors, learning about the physical and cultural

2   environment, and engaging in all manner of outdoor recreational activities.  In short, everyone is

3   living the camp life for several weeks.  Where the leave from on these expeditions is far less

4   significant as what they are doing.  Based on the foregoing, ARCC respectfully requests that this

5   Court grant the instant Motion for Partial Summary Judgment with respect to Plaintiffs' Fourth

6   Cause of Action for violation of the FLSA, Sections 206, 207 and 216.  ARCC also requests that

7   the Court find that ARCC is entitled to a finding on its First Affirmative Defense that it is, as a

8   matter of law, an organized camp under the California Health & Safety Code.

9         If the Court grants partial summary judgment, Defendant ARCC respectfully requests that

10   the Court specify that its ruling is a final determination of the adjudged issues, which is not

11   subject to future proceedings in the case.

13   Dated: February 28, 2013                              HIRSCHFELD KRAEMER LLP

15                                                    By:  /s/  Reed E. Schaper
16                                                          Reed E. Schaper
                                                           Kristin L. Oliveira
17                                                    Attorneys for Defendants
                                                     ADVENTURES ROLLING CROSS
18                                                    COUNTRY, INC., dba ADVENTURES
                                                     CROSS COUNTRY (ARCC) and SCOTT
19                                                    VON ESCHEN

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

DEFENDANT'S NOT. OF MTN AND MTN FOR PARTIAL SUMMARY
JUDGMENT; MEMO. OF P&A; CASE NO. 3:12-CV-00982-EMC