UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER WRIGHT, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>ADVENTURES ROLLING CROSS COUNTRY, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-12-0982 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Docket Nos. 97, 101)** |

    Plaintiffs Peter Wright and Michelle Trame previously worked for Defendant Adventures Rolling Cross Country, Inc. ("ARCC") as "Trip Leaders." They have filed a class and collective action complaint against ARCC as well as its president, Scott Von Eschen, asserting wage claims under federal and California employment law. Currently pending before the Court are the parties' cross-motions for partial summary judgment. The main issue, which is raised in both motions, is whether or not ARCC is exempt from federal and state minimum wage and overtime requirements because it is an organized camp.

    Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' motion and **DENIES** Defendants' motion.

///

///

///

## I. FACTUAL & PROCEDURAL BACKGROUND

The parties have submitted the following evidence in conjunction with the pending motions. Where there are disputes of fact, they are so noted. In addition, where there are evidentiary objections in need of ruling,[1] they are so noted.

ARCC was founded in 1983. It has maintained an administrative office in Mill Valley, California, since 1999. *See* Docket No. 102 (Von Eschen Decl. ¶ 2); Docket No. 98 (Schwartz Decl., Ex. A) (Von Eschen Depo. at 8-9). According to ARCC, it offers trip-and travel camps for teenagers, both domestic and international. *See* Docket No. 102 (Von Eschen Decl. ¶ 3). According to Plaintiffs, all that ARCC offers are, in essence, chaperoned tours. *See, e.g.*, Docket No. 99 (Wright Decl. ¶ 19). Because there is a dispute between the parties over what exact service ARCC offers, the Court shall hereinafter refer to ARCC's service as a program (and not either a camp or tour).

Each program offered by ARCC is led by two to three Trip Leaders. Docket No. 102 (Von Eschen Decl. ¶ 9). Trip Leaders must be at least twenty-one years old. Frequently, they are college students and graduates. *See* Docket No. 102 (Von Eschen Decl. ¶ 9). "ARCC requires that each . . . Trip Leader [must] have a minimum of 80 hours of training in Emergency Wilderness Medicine." Docket No. 102 (Von Eschen Decl. ¶ 20). "ARCC does not pay its Trip Leaders by the hour, nor does it pay overtime wages." Docket No. 102 (Von Eschen Decl. ¶ 28). Instead, it pays its Trip Leaders a stipend at the end of a trip. *See* Docket No. 102 (Von Eschen Decl. ¶ 28). Trip Leaders also receive free travel and free housing and board. *See* Docket No. 102 (Von Eschen Decl. ¶ 28). Trip leaders receive training prior to a trip and, after a trip, there is a debriefing. *See* Docket No. 102 (Von Eschen Decl. ¶ 21). Both pre-trip training and post-trip debriefing takes place at ARCC's office in Mill Valley. Trip Leaders spend approximately 10-14 days in pre-trip training and post-trip debriefing. *See* Von Eschen Decl. ¶ 21.

Each year, ARCC offers approximately fifty programs for teens. The programs run most frequently between June and August. Starting in the fall of 2011, ARCC began a "Gap" program for

---

[1] Most objections are moot because the Court need not rely on the evidence in ruling on the summary judgment motions.

2

the September-December period. *See* Docket No. 102 (Von Eschen Decl. ¶ 7); Docket No. 98 (Schwartz Decl., Ex. A) (Von Eschen Depo. at 23). For domestic programs, teens stay at campgrounds. *See* Docket No. 102 (Von Eschen Decl. ¶¶ 10, 17); Docket No. 119 (Supp. Von Eschen Decl. ¶ 2); *see also* Docket No. 110 (Dorman Decl. ¶ 14) (describing program where teens traveled to Alaska; stating that "[t]he student campers and Trip Leaders camped for the entire six-week time" and "did not sleep in hotels"). For international programs, indoor stays are included. There is some dispute between the parties as to whether accommodations are primarily indoor or outdoor – that ultimately may be dependent on the specific program.

There are three basic ARCC programs: (1) a multisport program, (2) a service program, and (3) a language program. *See* Docket No. 102 (Von Eschen Decl. ¶ 13); *see also* Docket No. 98 (Schwartz Decl., Ex. A) (Von Eschen Depo. at 94).

In his declaration, Mr. Von Eschen describes the programs as follows:

- Multisport: The teens engage in a number of recreational activities such as backpacking, hiking, camping, rock climbing, and whitewater rafting. During the program, Trip Leaders set aside time to teach classes on, *e.g.*, marine biology, map and compass techniques, and natural history of the area visited. *See* Docket No. 102 (Von Eschen Decl. ¶ 14).
- Service: The teens help with organizations such as Habitat for Humanity, the Golden Gate Conservacy, and the Truckee Donner Land Trust. The teens also participate in recreational activities such as backpacking, kayaking, and hiking. *See* Docket No. 102 (Von Eschen Decl. ¶ 15).
- Language: The teens "immers[e]" themselves in a foreign language abroad and further participate in recreational activities such as sailing, rafting, and hiking. *See* Docket No. 102 (Von Eschen Decl. ¶ 16).

In a supplemental declaration, Mr. Von Eschen testifies that, while there is sightseeing involved in the programs, the sightseeing is limited. For example, for the program that Mr. Wright led, out of 23 days, "just four days were carved out for sightseeing in Rome and Athens. Otherwise, [Mr.] Wright and his campers spent most of their time engaged in outdoor activities such as camping, sailing, windsurfing and scuba diving." Docket No. 119 (Von Eschen Decl. ¶ 6). For the

1  program that Ms. Trame led, out of 25 days, "the Trip Leaders and student campers spent just one-
2  and-a-half days touring a city, San Jose. Otherwise [she] and her campers spent the majority fo their
3  time doing outdoor activities like rafting, surfing, sailing, and scuba diving." Docket No. 119 (Von
4  Eschen Decl. ¶ 6).

5  In their declarations, Plaintiffs maintain that "ARCC does not really provide 'outdoor group
6  living' experience," Docket No. 100 (Trame Decl. ¶ 15); they also maintain that ARCC "provides
7  little in the way of outdoor education." Docket No. 100 (Trame Decl. ¶ 15); *see also* Docket No. 99
8  (Wright Decl. ¶ 19) (stating that, "[f]rom what I observed, ARCC . . . offers chaperoned tours to
9  exotic destinations around the world for teens, rather than an outdoor education-based experience").
10 Defendants have objected to this testimony on the grounds of lack of personal knowledge,
11 speculation, and improper nonexpert opinion, but the objection is largely without merit. In any
12 event, Defendants have offered declarations from former Trip Leaders who essentially dispute
13 Plaintiffs' characterizations. *See generally* Docket No. 110 (Dorman Decl.); Docket No. 111 (Durst
14 Decl.).

15 ARCC has presented evidence that it advertises and markets its services on camp websites
16 and through, *e.g.*, independent camp consultants and camp fairs. *See* Docket No. 102 (Von Eschen
17 Decl. ¶¶ 30-37). ARCC has also presented evidence that it is a member of the American Camp
18 Association ("ACA"), although not at this point an accredited member. *See* Docket No. 102 (Von
19 Eschen Decl. ¶ 29); Docket No. 98 (Schwartz Decl., Ex. A) (Von Eschen Depo. at 168-69).
20 Apparently, ARCC has been a member of ACA years ago but let that membership lapse in 1995 or
21 1996. ARCC only rejoined as a member in February 2012, more specifically, after this lawsuit was
22 filed. *See* Docket No. 98 (Schwartz Decl., Ex. A) (Von Eschen Depo. at 168-69). Finally, ARCC
23 has presented evidence that it has purchased liability insurance through its insurer's "Camp
24 Division." *See* Docket No. 102 (Von Eschen Decl. ¶ 38).

25 In turn, Plaintiffs have presented evidence that they "never heard anyone affiliated with the
26 company refer to ARCC as a 'camp' or to any participant as a 'camper,'" Docket No. 100 (Trame
27 Decl. ¶ 14), or to a Trip Leader as a "camp counselor." *See* Docket No. 99 (Wright Decl. ¶ 23); *see*
28 *also* Docket No. 98 (Schwartz Decl., Ex. A) (Von Eschen Depo. at 22) (admitting that he is not

United States District Court
For the Northern District of California

aware of any document of ARCC that references Trip Leaders as camp counselors). In declarations submitted by Defendants, former Trip Leaders maintain that they nevertheless acted and were expected to act as camp counselors. *See* Docket No. 110 (Dorman Decl. ¶ 19); Docket No. 111 (Durst Decl. ¶¶ 19, 21).

## II. DISCUSSION

In the parties' cross-motions for partial summary judgment, the main issue is whether ARCC is exempt from minimum wage and overtime requirements, both under federal and state law. Under federal law, there is an exemption for recreational establishments and organized camps where certain requirements are met. Under state law, there is an exemption for organized camps where certain requirements are met.

Plaintiffs' motion includes two additional issues: (1) whether, as a matter of law, Defendants can establish a "good faith" defense (which would limit damages and/or penalties) based on the above exemptions and (2) whether, as a matter of law, Plaintiffs would be entitled to payment for an entire workweek (assuming they prevail) so long as part of the workweek was for work in the United States or California.

A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides a court shall grant summary judgment to the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*,

1  477 U.S. 317, 322 (1986). However, where a defendant moves for summary judgment based on an
2  affirmative defense for which it has the burden of proof, the defendant "must establish beyond
3  peradventure all of the essential elements of the . . . defense to warrant judgment in [its] favor."
4  *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks
5  and emphasis omitted); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177
6  (9th Cir. 2006) (noting that a defendant bears the burden of proof at summary judgment with respect
7  to an affirmative defense).

B.  Exemptions

Both federal law and California law – *i.e.*, the Fair Labor Standards Act ("FLSA") and the California Labor Code – provide for exemptions from their respective minimum wage and overtime requirements. At issue in this case are two exemptions: (1) an exemption for recreational establishments, which is provided for in federal law only, and (2) an exemption for organized camps, which is provided for in both federal and state law.[2]

Under both federal and state law, exemptions such as those at issue here are narrowly construed. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (stating that "[a]ny exemption from [the FLSA] must . . . be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress"); *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1046 (9th Cir. 2005) (noting the same); *Nordquist v. McGraw-Hill Broadcast'g Co.*, 32 Cal. App. 4th 555, 562 (1995) (stating that exemptions from California's wage and hour laws "are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms"). Furthermore, the employer has the burden of proving that an exemption is applicable. *See Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (stating that "[a]n employer who claims an exemption from the FLSA has the burden of showing that the exemption applies"); *Nordquist*, 32 Cal. App. 4th at 562 (noting the same under California law).

---

[2] The recreational establishment exemption and organized camp exemption can be found in the same provision in the FLSA.

6

1. FLSA

As noted above, the FLSA provides for an exemption from the minimum wage and overtime requirements for recreational establishments and organized camps.[3] That exemption states as follows:

> (a) Minimum wage and maximum hour requirements. The provisions of sections 6 . . . and 7 [29 U.S.C. §§ 206, 207] shall not apply with respect to –
>
> . . . .
>
> (3) any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year . . . .

29 U.S.C. § 213(a)(3).

In their papers, Plaintiffs focus on the fact that, under § 213(a)(3), there is an exemption only for an "employee employed by an *establishment* which is an amusement or recreational establishment [or] organized camp." *Id.* (emphasis added). Plaintiffs note that "establishment" is defined by regulations as a "'distinct physical place of business,'" 29 C.F.R. § 779.23[4]; *see also id.* §

---

[3] In their papers, Plaintiffs argue that Defendants waived their right to invoke at least the recreational establishment exemption. Plaintiffs point out that, during the deposition of Mr. Von Eschen, defense counsel stated, "We're not pursuing any other exemption other than camp." Schwartz Decl., Ex. A (Von Eschen Depo. at 80). Although Plaintiffs' argument is not without some merit, the Court rejects it. First, defense counsel subsequently stated: "[R]ight now that's our position." Schwartz Decl., Ex. A (Von Eschen Depo. at 80). Second, by referring to the organized camp exemption, defense counsel may have been invoking the entirety of § 213(a)(3) which covers both recreational establishments and organized camps – especially because the Department of Labor has indicated that summer camps may be considered recreational establishments. *See* Wage-Hour Op. Letter No. 903 (June 10, 1968), *available at* 66-69 Wages Hours (CCH) P30,914 (stating that summer camps may qualify as recreational establishments).

[4] Section 779.23 provides in full:

> As used in the Act, the term establishment, which is not specially defined therein, refers to a "distinct physical place of business" rather than to "an entire business or enterprise" which may include several separate places of business. This is consistent with the meaning of the term as it is normally used in business and in government, is judicially settled, and has been recognized in the Congress in the course of

779.303 (noting that, "[a]s previously stated in § 779.23, the term establishment as used in the Act means a distinct physical place of business"), and therefore for ARCC to qualify for the exemption it must be a distinct place of business that *is* a recreational establishment or organized camp. According to Plaintiffs, while ARCC may have a distinct place of business – *i.e.*, its administrative office in Mill Valley – that place of business is not a recreational establishment or organized camp itself because it is simply an administrative office and the actual recreation or camping takes place off site. In short, Plaintiffs place a premium on the word "is" as used in the phrase "an establishment [*i.e.*, distinct physical place of business] which *is* an amusement or recreational establishment [or] organized camp." 29 U.S.C. § 213(a)(3) (emphasis added); *see also* http://www.merriam-webster.com/dictionary/be (last visited April 24, 2013) (defining the verb "be" as "to equal in meaning").

In response, Defendants argue that ARCC is an establishment because it has a distinct physical place of business (*i.e.*, its administrative office in Mill Valley) and that ARCC is a recreational establishment or organized camp because those are the services it offers. According to Defendants, that those services are offered off site is immaterial because nothing about § 213(a)(3) specifically requires that the services be offered at the distinct physical place of business.

Defendants' position is not without some merit. It is possible that Plaintiffs have attributed more meaning to the phrase "a distinct physical place of business" than may be warranted. Arguably, the only reason for defining "establishment" as a distinct physical place of business was so that it could be distinguished from an integrated business enterprise. *See* 29 C.F.R. § 779.23 (quoted in full in note 4, *supra*); *see also* 29 U.S.C. § 203(r)(1) (providing that "'[e]nterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one

---

> enactment of amendatory legislation (*Phillips v. Walling*, 324 U.S. 490; *Mitchell v. Bekins Van & Storage Co.*, 352 U.S. 1027; 95 Cong. Rec. 12505, 12579, 14877; H. Rept. No. 1453, 81st Cong., 1st Sess., p. 25). As appears more fully elsewhere in this part, this is the meaning of the term as used in sections 3(r), 3(s), 6(d), 7(i), 13(a), 13(b), and 14 of the Act.

29 C.F.R. § 779.23.

1    or more establishments"). Notably, much of the case law concerning the term "establishment"
2    focuses on this issue of establishment versus business enterprise. *See, e.g.*, *Brennan v. Yellowstone*
3    *Park Lines, Inc.*, 478 F.2d 285, 290 (10th Cir. 1973) (concluding that, in spite of integrated
4    management, a company's hotels, inns, lodges, cabins, and restaurants located at widely separated
5    places within Yellowstone National Park were not a single establishment but rather separate
6    establishments; reaching this conclusion based on, *e.g.*, the distances between the concessions and
7    "the heterogeneous nature of the areas of interest").

8    Nevertheless, the fact that Defendants' position has some merit does not mean that Plaintiffs'
9    position should therefore be rejected. Indeed, Plaintiffs' position has at least equal merit, if not
10   more, than Defendants'. As Plaintiffs point out, if one were to substitute "distinct physical place of
11   business" for the term "establishment," § 213(a)(3) would read in relevant part as follows: "a
12   distinct physical place of business which is an amusement or recreational establishment [or]
13   organized camp." Defendants' construction of § 213(a)(3) ignores the word "is." Significantly, the
14   section does not refer to an establishment "associated with" or "connected to" an organized camp.
15   Rather, it refers to an establishment that "is" an organized camp.

16   Furthermore, the legislative history of the amendment is ambiguous. On the one hand,
17   Senator Helms – who introduced the amendment which added "organized camp" as well as
18   "religious or non-profit educational conference center" to the list of exemptions under § 213(a)(3) –
19   referred to "religious and YMCA conference centers" as facilities at which workers should be
20   exempt. 123 Cong. Rec. 32724-25; *see also id.* at 32725-26 (noting that "[t]hese regulations were
21   not designed for, and do not fit, the realities of the *camp and conference center* situation") (emphasis
22   added). Senator Helms's examples fit the description of camps and centers with a physical site.

23   On the other hand, other comments by Senator Helms suggest that his main concern was that
24   the organized camp/nonprofit educational conference center exemption be applied to workers in
25   camps who typically are supplemental wage earners (which could include not only high school and
26   college students but also, *e.g.*, schoolteachers) working on a seasonal or temporary basis and whose
27   work was not well fitted to the typical minimum wage/overtime requirements – *i.e.*, because the
28   nature of the job involved unusual hours and because room and board and recreation were a large

1 part of the work experience.[5] That concern would apply regardless of whether an organized camp was tied to a fixed site. *See id.* at 32724-26.

"Any exemption from [the FLSA] must . . . be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." *Phillips*, 324 U.S. at 493. Accordingly, because the plain language of the statute does not clearly weigh in Defendants' favor and because the Congressional intent behind the exemption is ambiguous, the Court agrees with Plaintiffs that, under a narrow construction of the FLSA exemption for recreational establishments and organized camps, the exemption is not applicable to ARCC as a matter of law.

2. California Labor Code

Under the California Labor Code, the organized camp exemption provides as follows:

> (a) No student employee, camp counselor, or program counselor of an organized camp shall be subject to a minimum wage or maximum hour order of the commission if the student employee, camp counselor, or program counselor receives a weekly salary of at least 85 percent of the minimum wage for a 40-hour week, regardless of the number of hours per week the student employee, camp counselor, or program counselor might work at the organized camp. If the student employee, camp counselor, or program counselor works less than 40 hours per week, the student employee, camp counselor, or program counselor shall be paid at least 85 percent of the minimum hourly wage for each hour worked.
>
> (b) An organized camp may deduct the value of meals and lodging from the salary of a student employee, camp counselor, or program counselor pursuant to appropriate orders of the commission.
>
> (c) As used in this section, "organized camp" means an organized camp, as defined in Section 18897 of the Health and Safety Code, which meets the standards of the American Camping Association.

Cal. Lab. Code § 1182.4. Section 18897, in turn, defines "organized camp" as "a site with program and facilities established for the primary purposes of providing an outdoor group living experience

---

[5] For example, Senator Helms specifically noted that the overtime pay "requirements for cabin counselors in camps, for example, who are literally 'on duty' 24 hours a day, are unrealistic." 123 Cong. Rec. 32725.

10

1  with social, spiritual, educational, or recreational objectives, for five days or more during one or
2  more seasons of the year." Cal. Health & Safety Code § 18897.

3  Notably, there is a dearth of authority interpreting either § 1182.4 or § 18897. Both parties
4  admit as much. Thus, in their papers, the parties have largely relied on the plain language of the
5  statutes in advocating their respective positions.

6  Similar to above, Plaintiffs contend that ARCC cannot meet the state law definition of
7  organized camp because, while ARCC may have a site with facilities in Mill Valley, those facilities
8  – which are simply an administrative office – do not "provid[e] an outdoor group living experience
9  with social, spiritual, educational, or recreational objectives, for five days or more during one or
10 more seasons of the year." *Id.* In turn, Defendants argue that § 18897 "does not require that a camp
11 offer the outdoor group living experience *at* a physical facility" because "[a] facility need not be a
12 physical structure, but simply something designed or created to provide a service or fulfill a need."
13 Docket No. 118 (Defs.' Reply at 7) (emphasis in original). Defendants also advance a secondary
14 argument – *i.e.*, that, even if a physical facility or something akin to such is required, ARRC does
15 "offer[] programs, through various facilities, which present social, recreational, and educational
16 opportunities in the traditional summer camp part of the year," Docket No. 109 (Defs.' Opp'n at 10);
17 those facilities might belong to a third party but they are nonetheless still used by ARCC.

18 The Court finds Defendants' first argument problematic – particularly because of the plain
19 meaning of the word "facility," *see, e.g.*, http://www.merriam-webster.com/dictionary/facility (last
20 visited April 5, 2013) (defining "facility" as "something (as a hospital) that is built, installed, or
21 established to serve a particular purpose"). Under § 18897, an organized camp must be a site with
22 both "programs and facilities." On the other hand, Defendants' second argument is not entirely
23 without merit. As Defendants contend, even if an organized camp is a "site with . . . facilities," the
24 statute does not clearly bar an entity from being an organized camp simply because it uses the site
25 with facilities of a third party.

26 Nevertheless, Defendants' second argument requires a more strained reading of § 18897,
27 especially in light of the principle that exemptions under California's wage and hour laws "are
28 narrowly construed against the employer and their application is limited to those employees plainly

and unmistakably within their terms." *Nordquist*, 32 Cal. App. 4th at 562 (stating that exemptions from California's wage and hour laws "are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms").

Accordingly, similar to above, the Court concludes that California's exemption for organized camps is, as a matter of law, inapplicable to ARCC.

C. <u>Good Faith</u>

In Plaintiffs' motion for partial summary judgment, they also ask the Court to make a ruling that, as a matter of law, Defendants cannot establish a "good faith" defense based on the above exemptions under federal and state law.[6]

1. <u>FLSA</u>

Under the FLSA, there are two statutes that provide for a good faith defense, namely 29 U.S.C. §§ 259 and 260.[7] Under § 259,

> no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Wage and Hour Division of the Department of Labor] or any administrative practice or enforcement policy of [the] agency with respect to the class of employers to which he belonged.

---

[6] In their papers, Defendants protest that Plaintiffs improperly raised this issue because the parties had previously agreed to bring only the above exemptions to the Court for ruling on summary judgment. *See* Docket No. 109 (Defs.' Opp'n at 2 n.1) (arguing that "[a]djudication as to a willful violation or willful misconduct giving rise to penalties under the FLSA or Labor Code § 203 was not part of the parties' agreement to bring the exemption issue before the court"). However, Defendants go on to provide substantive briefing on the issue, *see* Docket No. 109 (Defs.' Opp'n at 11-13), and therefore the Court addresses the issue on the merits.

[7] In their opening motion, Plaintiffs erroneously cited to 29 U.S.C. § 255 instead of § 259. *See* Docket No. 97 (Mot. at 21). That Plaintiffs meant to cite to § 259 is demonstrated by their correct citation to § 259 in their reply brief. *See* Docket No. 117 (Reply at 4). Furthermore, even in their opening motion, it is clear that Plaintiffs meant to cite to § 259 by arguing that "Defendants have failed to identify a single judicial opinion or guidance from any federal or state agency applying the organized camp exemptions to teen tour operators." Docket No. 97 (Pls.' Mot. at 20). Section 255, unlike § 259, concerns whether an employer acted willfully rather than in good faith. *See* 29 U.S.C. § 255(a) (providing for a three-year, instead of two-year, statute of limitations where there has been a "willful violation").

12

29 U.S.C. § 259(a). Under § 260, a court has discretion to award no liquidated damages or, in effect, limited liquidated damages "if the employer shows to the satisfaction of the court that the action or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his action or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. Defendants have invoked both good faith defenses in their answer. *See* Docket No. 62 (third and tenth affirmative defenses in amended answer).

          a.        <u>Section 259</u>

In their papers and at the hearing, Defendants did not really contest that they could not invoke the good faith defense provided for under § 259. *See, e.g.*, Docket No. 109 (Defs.' Opp'n at 13) (simply arguing that the Court could not "rule as a matter of law that Defendants are not entitled to pursue their Third Affirmative Defense [*i.e.*, their § 260 good faith defense]"). For that reason alone, Plaintiffs are entitled to summary judgment on the § 259 good faith defense.

Furthermore, even if Defendants were to argue that their actions were "in good faith in conformity with and in reliance on [a] written administrative regulation," 29 U.S.C. § 259(a) – *i.e.*, the recreational establishment and organized camp exemption – they would fare no better. Defendants cite no reliance on any agency regulation or interpretative guideline, and certainly not one that is clear on this issue. *See, e.g.*, *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 927 (11th Cir. 1987) (stating that, "an employer's actual reliance upon his own incorrect interpretation of a vague and general administrative guideline will not suffice"); *Bollinger v. Residential Capital, LLC*, 863 F. Supp. 2d 1041, 1050 (W.D. Wa. 2012) (stating that "§ 259 requires an employer to show 'that the [Administrator guidance] on which it relied provided a clear answer to its particular situation'"); *Burnison v. Memorial Hosp., Inc.*, 820 F. Supp. 549, 558 (D. Kan. 1993) (disallowing good faith defense because administrative regulation relied upon was too general; stating that, "[t]o establish reliance, the administrative interpretation relied upon must provide a clear answer to the particular situation").

          b.        <u>Section 260</u>

As noted above, under § 260, a court has discretion to award no or limited liquidated damages "if the employer shows to the satisfaction of the court that the action or omission giving

rise to [the] action was in good faith and that he had reasonable grounds for believing that his action or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. As the Ninth Circuit has noted, § 260 basically requires both subjective good faith as well as objective good faith. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003).

Contrary to what Plaintiffs argue, the Court cannot say as a matter of law that Defendants lacked the requisite subjective and objective good faith. For example, the fact that ARCC did not become a member of the ACA until after this lawsuit was filed is not dispositive of a lack of subjective good faith. There is evidence that ARCC was a member of the ACA prior to the lawsuit (albeit never an accredited member) but, for whatever reason, let that membership lapse. Also, regardless of whether ARCC was a member of the ACA, it still marketed itself through, *e.g.*, camp websites, independent camp consultants, and camp fairs.

As for objective good faith, the Court's discussion above as to the applicability of the recreational establishment/organized camp exemption demonstrates that the issue is a close one in which reasonable minds can differ. At the hearing, Plaintiffs argued that, under *Alvarez*, an employer cannot rely on the § 260 good faith defense where it has disregarded the mere *possibility* that it has violated the FLSA. This argument is without merit. The portion of *Alvarez* referenced by Plaintiffs does not concern § 260 but rather § 255, which provides for an extension of the two-year statute of limitations to three years if the employer willfully violates the FSLA. The Ninth Circuit stated: "*For § 255's extension to obtain*, an employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute." *Alvarez*, 339 F.3d at 908-09 (emphasis added). Plaintiffs fail to cite any authority equating the standard under § 255 to the objective good faith standard of § 260.

Accordingly, to the extent Plaintiffs seek summary judgment on the § 260 good faith defense, that motion is denied.

2. California Labor Code

Under California Labor Code §§ 203 and 226, an employer is subject to penalties based on a willful failure to pay wages to employees upon termination of employment or a knowing and intentional failure to provide itemized statements to employees. *See* Cal. Lab. Code § 203(a)

(providing for penalties "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits"); *id.* § 226(e) (providing for penalties where there is "a knowing and intentional failure by an employer to comply with subdivision (a)" – *i.e.*, a failure to provide an itemized statement to employees). Under § 203, "[a] good faith belief in a legal defense will preclude a finding of willfulness." *Armenta v. Osmose*, 135 Cal. App. 4th 314, 325 (2005); *see also* 8 Cal. Code Regs. § 13250 (providing that "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203"; adding that "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute'"). There is no dispute by the parties that there is a comparable good faith defense for § 226 which, similar to § 203, requires knowing and intentional conduct. *See, e.g.*, *Dalton v. Lee Publ'ns, Inc.*, No. 08cv1072 BTM (NLS), 2011 U.S. Dist. LEXIS 29835, at *3 (S.D. Cal. Mar. 22, 2011) (granting summary judgment on, *inter alia*, §§ 203 and 226 claims "due to Defendant's good faith belief that Plaintiff is an independent contractor").

In their papers, Plaintiffs seem to argue that Defendants could not have acted in good faith because they admit to not having relied on the opinion of an attorney or even a court or federal or state agency opinion on the California Labor Code exemption. But Plaintiffs have not cited any authority that such circumstances preclude a finding of no good faith.

At the hearing, Plaintiffs put forward a new argument that good faith exists only where there is a split in authority or where there is a new law whose parameters have not been tested yet, neither situation which is presented in the case herein. But again Plaintiffs have cited to no authority that specifically establishes these as requisites to the good faith defense under §§ 203 and 226. For the reasons stated above, the legal issue is a close one, and there is no judicial precedence providing clear guidance on the scope of the exemption at issue.

The Court thus declines to grant summary judgment in favor of Plaintiffs because it cannot say, as a matter of law, that Defendants' good faith defense is not viable. *See Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8-9 (1981) (noting that the state of the law was not clear as to whether the employer had a right to set-off a debt that employee owed it against the wages owed to

1 the employee; because of this uncertainty, there was not willful nonpayment of wages within the
2 meaning of § 203).

D.  Workweek

Finally, in its motion for partial summary judgment, Plaintiffs ask the Court to make a ruling that, so long as they worked part of the week in the United States (FLSA) or California (California Labor Code), the entire week should be counted – *i.e.*, even if the rest of the work was performed outside of the country or state. Presumably, Plaintiffs are making this argument now because the Court previously dismissed their FLSA claim to the extent it was based on work performed abroad and likewise dismissed their California Labor Code claims to the extent they were based on work performed outside of California. *See* Docket No. 22 (Order at 4-5, 9). Defendants did not address this issue at all in their opposition brief.

The Court agrees with Plaintiffs' position, not only because of the lack of any opposition by Defendants but also because of the express provisions of the federal regulations. More specifically, footnote 20 to 29 C.F.R. § 776.7 provides as follows:

> Work performed by employees in "a work place within a foreign country or within territory under the jurisdiction of the United States" other than those enumerated in this paragraph is exempt by this amendment [to the FLSA] from coverage under the Act. When part of the work performed by an employee for an employer in any workweek is covered work performed in any State, *it makes no difference where the remainder of such work is performed; the employee is entitled to the benefits of the Act for the entire workweek unless he comes within some specific exemption.*

29 C.F.R. § 776.7 n.20 (emphasis added).

While there does not appear to be a comparable regulation under California law, the Court notes that, "[i]n the absence of controlling or conflicting California law, California courts generally look to federal regulations under the FLSA for guidance," particularly where "[t]he policies underlying the federal regulation . . . apply equally to the employee-protective policies embodied in California labor law." *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 903 (2012); *Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361, 368 (2011) (noting that "federal authority is persuasive insofar as it does not conflict with the remedial purposes of the California labor laws"); *cf. Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 592 (2000) (departing from federal

authority which was "entirely consistent with the recognized principle that state law may provide employees greater protection than the FLSA").

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for partial summary judgment and denies Defendants' motion for partial summary judgment. More specifically, the Court rules as follows:

(1) The Court rejects Defendants' contention that the FLSA recreational establishment/organized camp exemption is applicable and further **GRANTS** Plaintiffs' motion for summary judgment on this issue.

(2) Defendants cannot, as a matter of law, rely on the § 259 good faith defense, and so the Court **GRANTS** Plaintiffs' motion for summary judgment on this issue.

(3) Defendants, however, are not precluded from relying on the § 260 good faith defense, and so the Court **DENIES** Plaintiffs' motion for summary judgment on this issue.

(4) The Court rejects Defendants' contention that the California Labor Code organized camp exemption is applicable and further **GRANTS** Plaintiffs' motion for summary judgment on this issue.

(5) Defendants, however, are not precluded from relying on a good faith defense for the §§ 203 and 226 claims, and so the Court **DENIES** Plaintiffs' motion for summary judgment on this issue.

(6) The Court agrees with Plaintiffs that, under the FLSA or the California Labor Code, so long as a Trip Leader worked part of the week in the United States (FLSA) or California (California Labor Code), the entire week should be counted – *i.e.*, even if the rest of the work was performed outside of the country or state. Plaintiffs' motion for summary judgment on this issue is **GRANTED**.

///
///
///
///

17

1  The case management conference in this case is set for May 23, 2013. The parties shall address in the joint case management conference statement scheduling for, *inter alia*, discovery and class certification.

This order disposes of Docket Nos. 97 and 101.

IT IS SO ORDERED.

Dated: April 24, 2013

_____
EDWARD M. CHEN
United States District Judge